## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PERRY BURRIS, SHAWN STRAWN, EDWARD WRIGHT *and* ALFONSO PERCY PEW, | : : : |
| **Plaintiffs** | : |
| | : **No.** |
| **v.** | : : |
| JOHN E. WETZEL, SHARON CLARK, HEATHER HALDERMAN, MARK GARMAN, DORINA VARNER, BRIAN MAKOSY, MS. ABBEY WASSON, LT. SHERMAN, JANE/JOHN DOES, NIKKI PAUL, LT. VANCE, TRISHA PILOSI *and* PHILLIPS, | : : : : : : : : |
| **Defendants** | : |

### NOTICE OF REMOVAL

Defendants Wetzel, Clark, Halderman, Garman, Varner, Makosy, Wasson, Sherman, Paul, Pilosi, and Phillips, by and through their undersigned counsel, hereby remove the above-captioned action from the Court of Common Pleas of Cumberland County, Pennsylvania, to the United States District Court for the Middle District of Pennsylvania.   Defendants state that the following grounds support removal:

1.     On or around May 6, 2019, Plaintiff filed a Complaint in the Court of Common Pleas of Cumberland County, Pennsylvania, at Docket No. 2019-04948. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2.      Defendants were served with the Complaint on February 16, 2021.

3.      Plaintiffs purport to assert several federal claims in this suit, including alleged violations of the First and Eighth Amendments to the United States Constitution, as well as the Americans with Disabilities Act, and others.  Plaintiffs also assert various claims under state law.

4.      This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

6.      This action is removable to this Court pursuant to 28 U.S.C. § 1441(a).

7.      Pursuant to 28 U.S.C. §1446(d), Defendants are filing a Notice of Removal on this date with the Prothonotary of the Court of Common Pleas of Centre County and serving a copy of the same on Plaintiffs.  A copy of the Notice is attached hereto as **Exhibit B**.

8.      Defendants specifically reserve, and by the filing of this Removal Petition does not waive, all applicable defenses to Plaintiff's Complaint.  The filing of this Notice does not represent acknowledgement of the validity of any claims or allegations made by Plaintiffs.

**WHEREFORE**, Defendants respectfully remove this action to the

United States District Court for the Middle District of Pennsylvania.

<div style="text-align: right;">

**Respectfully submitted,**

**JOSH SHAPIRO**
**Attorney General**

</div>

By:   */s/Jonathan M. Blake*
         **JONATHAN M. BLAKE**
         **Deputy Attorney General**
**Office of Attorney General**         **Attorney ID 307030**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 783-7128**         **KAREN M. ROMANO**
         **Chief Deputy Attorney General**
         **Civil Litigation Section**
**jblake@attorneygeneral.gov**

**Date:  March 8, 2021**         **Counsel for Defendants**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PERRY BURRIS, SHAWN STRAWN, EDWARD WRIGHT** *and* **ALFONSO PERCY PEW,** | : | |
| **Plaintiffs** | : | |
| | : | **No.** |
| **v.** | : | |
| | : | |
| **JOHN E. WETZEL, SHARON CLARK, HEATHER HALDERMAN, MARK GARMAN, DORINA VARNER, BRIAN MAKOSY, MS. ABBEY WASSON, LT. SHERMAN, JANE/JOHN DOES, NIKKI PAUL, LT. VANCE, TRISHA PILOSI** *and* **PHILLIPS,** | : | |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I, Jonathan M. Blake, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on March 8, 2021, I caused to be served a true and correct copy of the foregoing document titled Notice of Removal to the Plaintiff via hand delivery through the Department of Corrections.  This alternative method of service is being used due to the COVID-19 emergency.

**<u>VIA HAND DELIVERY</u>**

**Perry Burris, HU-9132**
**SCI Rockview**
*Pro Se Plaintiff*

**Shawn Strawn, NA-1871**
**SCI Rockview (last known address)**
*Pro Se Plaintiff*

**Edward Wright, MD-9460**
**SCI Somerset**
*Pro Se Plaintiff*

**Alfonso Percy Pew, BT-7263**
**SCI Rockview**
*Pro Se Plaintiff*

*/s/Jonathan M. Blake*
**JONATHAN M. BLAKE**
Deputy Attorney General

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Perry Burris, Shawn Strawn, Edward Wright, Alfonso Percy Pew

### DEFENDANTS
Wetzel, Clark, Halderman, Garman, Varner, Makosy, Wasson, Sherman, Paul, Pilosi, and Phillips

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Centre County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro se

Attorneys *(If Known)*
Jonathan M. Blake, Deputy Attorney General
Office of Attorney General, 15th Floor Strawberry Square
Harrisburg, PA 17120 (717-783-7128)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❏ 1   U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* |
| ❏ 2   U.S. Government Defendant | ❏ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | | | ❏ 820 Copyrights | ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| ❏ 196 Franchise | | | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ☒ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ❏ 1 Original Proceeding | ☒ 2 Removed from State Court | ❏ 3 Remanded from Appellate Court | ❏ 4 Reinstated or Reopened | ❏ 5 Transferred from Another District *(specify)* | ❏ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC § 1983
Brief description of cause:
1st and 8th Amendments

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
1,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
03/08/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jonathan M. Blake

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 12/12)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.   **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI.   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# EXHIBIT A

WETZEL 2/16/21
Cumberland Co.
Sheriffs
AB

IN THE COURT OF COMMON PLEAS
FOR CUMBERLAND COUNTY PENNSYLVANIA
CIVIL ACTION

PERRY BURRIS, #HU9132          NO. 2019-04948
          Plaintiff, Pro se    42 USC § 1983
                               CIVIL RIGHTS COMPLAINT

          V.                   (Jury Trial Demanded)

JOHN E. WETZEL · SECRETARY OF CORRECTIONS
SHARON CLARK · UNIT MANAGER
HEATHER HALDERMAN · MAJOR OF UNIT MANAGERS
MARK GARMAN · SUPERINTENDENT
DORINA VARNER · CHIEF GRIEVANCE OFFICER
BRIAN MAKOSY · COUNSELOR
MS. ABBEY WASSON · PSYCHOLOGIST
LT. SHERMAN · PREA LIEUTENANT
DEFENDANT(S)                   JUDGE _____


SHAWN STRAWN #NA-1871
PLAINTIFF, PRO SE


          V.

JOHN E. WETZEL · SECRETARY OF CORRECTIONS
JANE/JOHN DOE · STATEWIDE PREA COORDINATOR
SHARON CLARK · UNIT MANAGER
NIKKI PAUL · GRIEVANCE COORDINATOR
ABBEY WASSON · PSYCHOLOGIST
BRIAN MAKOSY · COUNSELOR
HEATHER HALDERMAN · MAJOR OF UNIT MANAGERS
LT. VANCE · SECURITY OFFICE
LT. SHERMAN · PREA LIEUTENANT
MARK GARMAN · SUPERINTENDENT
DORINA VARNER · CHIEF GRIEVANCE OFFICER
TRISHA PILOSI · HEARING EXAMINER
PHILLIPS · CULINARY
JOHN DOE · 6/9/18 · SARGEANT
JOHN DOE 7/21/18 LIEUTENANT

TRUE COPY FROM RECORD
In Testimony whereof, I ... re unto set my hand
and the seal of said Court at Carlisle, Pa.
This ___6___ day of ___MAY___, 20 _19_
_____
Prothonotary

CUMBERLAND COUNTY PENNSYLVANIA
2019 MAY -6 PM 12:14
OF THE PROTHONOTARY
FILED OFFICE

JOHN DOE 7/21/18 · NURSE
DEFENDANTS

EDWARD WRIGHT #MD-9460
PLAINTIFF, PRO SE

      V.

SHARON CLARK · UNIT MANAGER
HEATHER HALDERMAN · MAJOR OF UNIT MANAGERS
DORINA VARNER · CHIEF GRIEVANCE OFFICER
MARK GARMAN · SUPERINTENDENT
JANE/JOHN DOES · SECURITY OFFICE
JOHN E. WETZEL · SECRETARY OF CORRECTIONS

ALFONSO PERCY PEW, BT-7263

PLAINTIFF, PRO SE
      V.

SHARON CLARK · UNIT MANAGER
HEATHER HALDERMAN · MAJOR OF UNIT MANAGERS
     HOUSER · DEPUTY CENTRALIZED SERVICES
     McMAHON · DEPUTY FACILITY MANAGEMENT
MARK GARMAN · SUPERINTENDENT
NIKKI PAUL · GRIEVANCE COORDINATOR
DORINA VARNER · CHIEF GRIEVANCE OFFICER
JOHN E. WETZEL · SECRETARY OF CORRECTIONS

ALL DEFENDANTS ARE SUED IN OFFICIAL AND INDIVIDUAL CAPACITIES
UNDER COLOR OF LAW AS STATE ACTORS FOR MONETARY DAMAGES.

## 42 U.S.C. SUB-SECTION 1983 CIVIL RIGHTS
### COMPLAINT FILED IN STATE COURT

## I. JURISDICTION AND VENUE

1. THIS IS A CIVIL ACTION AUTHORIZED BY 42 U.S.C. SUBSECTION 1983 to redress the deprivation under color of state law of rights secured by the constitution of the United States, the court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). **Plaintiffs seek declaratory relief pursuant to 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.**

The Cumberland County Court of Common Pleas has concurrent jurisdiction over 42 U.S.C § 1983 Civil Rights claims. See Murtaugh V. County of Berks 535 PA. 50, 634 A.2d 179 (1993); Howlett v. Rose, 496 U.S. 356, 110 L.ED.2d 332, 110 S.Ct 2430 (1990); Heialy v. Commonwealth 153 Pa. Commonwealth 599, 621 A.2d 1212 (pA. Commonwealth (1993)

2. The Cumberland County Courthouse because Defendant John E. Wetzel et al. are employeed at 1920 Technology Parkway, Mechanicsburg, PA. 17050 which is in the Jurisdictional Venue of Cumberland County Courthouse.

## II. PLAINTIFFS

3. Plaintiff [Perry Burris #HU-9132] IS A D-Code Stability Mental Health inmate at all times in the complaint was housed on BA UNIT (S.N.U.) at SCI-ROCKVIEW in the custody of the Pennsylvania Department of Corrections.

PLAINTIFF [Shawn Strawn # NA-1871] is a D-Code stability Mental Health inmate at all times in the complaint was housed on BA UNIT (S.N.U.) at SCI-ROCKVIEW in the custody of the Pennsylvania Department of Corrections.

PLAINTIFF [Edward Wright #MD-9460] is a D-Code stability Mental Health inmate at all times in the complaint was housed on BA UNIT (S.N.U.) at SCI Rockview in the custody of the Pennsylvania Department of Corrections.

PLAINTIFF [Alfonso Percy Pew #BT-7263] is a D-Code Stability

-3-

Mental Health inmate at all times in the complaint was housed on
BA   UNIT   (S.N.U.)   at   SCI-ROCKVIEW   in   the   custody   of   the
Pennsylvania Department of Corrections.

## III. DEFENDANT(S)

4. Defendant (John E. Wetzel] is the [Secretary of Corrections of
Pennsylvania]. He is legally responsible for the over-all
operation of Pennsylvania Department of Corrections including
S.C.I. Rockview.

5. Defendant [Sharon Clark] is the [Unit Manager] of BA BA S.N.U
at S.C.I Rockview. She is legally responsible to supervise the
care of mental health stability inmates.

6. Defendants [Abbey Wasson], [Ms. Teresa Collins], [K. Bowman]
are Psychologist at S.C.I Rockview they are legally responsible
for all D-Code stability inmates mental health care and safety
and well being at S.C.I Rockview.

7. Defendant [Lt. Sherman] is the Prison Rape Elimination Act
Lieutenant at SCI Rockview and is legally responsible for the
safety and protection of all at risk inmates at S.C.I rockview
especially vulnerable D-Code stability inmates.

8. Defendant [Brian Makosy] is a [Counselor] at SCI Rockview and
is legally responsible for the inmates care, safety, well being
and social services.

9. Defendant [Jane Doe/John Doe] is the [Statewide PREA
Coordinator] their legal responsibility is to protect inmates
from being victims of sexual and physical violence and threats.

10. Defendant [Heather Halderman] is the Major of Unit Managers]
is the Supervisor of Defendant [Sharon Clark] and is over the
operations of BA Unit at SCI Rockview.

11. Defendant [Lt. Vance] is a Security Office staff and is
legally responsible for the security and safety of inmates at SCI
Rockview.

12. Defendant [Mark Garman] is the [Superintendent] and is
legally responsible for SCI Rockview staff and over all
operations including the protection and safety of all inmates

especially D-Code stability mental health inmates.

13. Defendant [Dorina Varner] is the [Chief Grievance Officer] and is legally responsible for adequate due process investigations into inmates complaints of abuse at SCI Rockview.

14. Defendant [Trisha Pilosi] is a [Hearing Examiner] and is legally responsible for providing fair, adequate due process minimum standards of opportunities to be heard, prepare a defense, submit evidence on own behalf and the opportunity to call witnesses at SCI Rockview for inmates.

15. Defendant [Phillips] is [Culinary Employee] and is legally responsible under the Pennsylvania Code of Ethics and Department of Corrections Code of Ethics to write truthful reports on inmates and not give falsified information.

16. Defendants [John Doe 6/9/18 Sergeant], [John Doe 7/21/18 Lieutenant] and [Jane Doe/John Doe Security Office] are all Correctional Officers who are legally responsible for the custody, care, control, safety and protection of all inmates at SCI Rockview especially well being of D-Code stability mental health inmates.

17. Defendant [John Doe 7/21/18 Nurse] is legally responsible for inmates protection, safety, care and well being at SCI Rockview.

All Defendants named herein lines 4 through 17 are sued in their official and individual capacities under color of state law as state actors for monetary damages.

-5-

IV. <u>FACTS</u>

1. Defendant [John E. Wetzel] the [Secretary of Pennsylvania Department of Corrections] regularly maintains a systematic practice, custom, tradition where inmates are put into physical and sexual danger by assaults from cell mates, that staff are aware of the potential danger in advance but deliberately ignores de-escalation of violence by implementing a Pennsylvania Department of Corrections official Policy on inmate cell agreements.

2. Defendant [John E. Wetzel] the [Secretary of Pennsylvania Department of Corrections De-Escalation Policy for training of Pennsylvania department of Corrections staff on how to De-Escalate the threat of inmate on inmate violence by cell mates through adequate cell agreement policy procedures which would pre-screen cell mates and have cell mates agree to compatibility.

3. Defendant [John E. Wetzel the [Secretary of Pennsylvania Department of Corrections] operates a statewide level history of inmate assaults on inmate cellies after staff was told of danger or should have known of potential danger through records that has occurred at SCI Huntington and SCI Fayette previously but now is systematic at SCI Rockview and have resulted into rapes, sexual assaults and aggravated assaults at SCI Rockview that threaten the present and future safety of all "D" Code stability inmates who are double celled without adequate cell agreement policy being created and implemented by Pennsylvania Department of Corrections Secretary Defendant John E. Wetzel.

4. Plaintiff [Perry Burris #HU-9132] a D-Code stability mental health roster inmate while housed at SCI Rockview on BA Unit S.N.U in 2018 was in a cell agreement with plaintiff Shawn Strawn #NA-1871 both inmates are Black (African American) compatible friends like father and son and Perry Burris regularly communicates and talks with Shawn Strawn parents and Shawn Strawn likewise regularly talks to and communicate with Perry Burris daughter both men are heterosexual cell mates and deeply religious as Perry Burris is a devoted muslim.

-6-

5. Plaintiff Perry Burris is 6 feet 4 inches and 235 pounds and Shawn Strawn being 5 feet 3 inches and 105 pounds and his first time in prison and fearful of pedophilia inmates, they sought to cell together and Perry Burris assured being 6 feet 4 inches that no one would sexually harass or victimize Shawn Strawn and Defendant [Sharon Clark - Unit Manager] was made aware of this desire by Shawn Strawn to be protected from pedophiles on BA Unit. See: Exhibit #1 with attachment Exhibit #2.

6. Defendant [Sharon Clark] motivated by white supremacy, racism and bias for people of color as well as ethnic discrimination against African Americans who are muslims was prejudice and had Plaintiff [Perry Burris] and Shawn Strawn removed from celling together and made up a bogus reason called "imbalance of power" without any proof to use as an excuse to separate plaintiffs and Defendant [Sharon Clark] intentionally repeated to house plaintiff Perry Burris with inmate cellies to initiate what is known as "Nigger gladiator camp" when cell mates are set up by staff to fight, assault and harm each other such was Defendant [Sharon Clark's] intentions by making Perry Burris and inmate Hrynko JX-0138 cell mates a second time after knowing there was a problem of potential danger from the first time the inmates were celled together. SEE: Exhibit #3

7. Defendant [Sharon Clark] subjected plaintiff Perry Burris intetionally for the purpose to cause physical harm with malice to be housed a "second time" with a known documented prior problem cell mate for 17 days from June 11th, 2018 to June 28th, 2018 placing plaintiff Perry Burris under imminent and future harm by inmate Jack Hrynko JX-0138 . SEE: Exhibit #4.

8. Defendants (Heather Halderman][Mark Garman] and [Dorina Varner] through their actions of involvement conspired, participated, acquiesced, aided, abetted and were accomplices in discriminating against Plaintiff [Perry Burris] and Plaintiff [Shawn Strawn] by allowing the falsehood of imbalance of power lie created by Defendant [Sharon Clark] to be used as cell mates to separate the two African American cell mates when the real reason was racial prejudice and religious hatred against

plaintiff [Perry Burris] a devoted muslim. SEE: Exhibit #5.

9. Defendants [Heather Halderman] and [Mark Garman] both colluded and conspired to protect their subordinate after being made aware that Defendant [Sharon Clark] was discriminating against plaintiff [Perry Burris] by race baiting coded speech such as calling him [A Big Brute] and spreading dangerous lies amongst staff employees and inmates that Plaintiff [Perry Burris] was a predator and implying to [Perry Burris], Staff, other inmates and Plaintiff [Shawn Strawn] that something is going on (implicating) that homosexual behavior is occurring which is libel speech and defamation of plaintiff Perry Burris character and reputation as a muslim, this placed plaintiff [Perry Burris] life in danger by other inmates.

10. Defendant [Lt. Sherman] receiving the potential predator label from Defendant [Sharon Clark] began to spread it to other inmates and staff including mentioning it to Shawn Strawn which actions all placed plaintiff [Perry Burris] a muslim in danger of violence and lost of life.

11. Defendant [Abbey Wasson] receiving the label predator from Defendant [Sharon Clark] began to act on this libel and slander by saying its highly inappropriate for plaintiff [Perry Burris] and Shawn Strawn to be cell partners despite the previous cell mate agreement and along with Defendant [Teresa Collins] and Defendant [Sharon Clark] the Defendant [Abbey Wasson] began a systematic retribution against plaintiff [Perry Burris] and Shawn Strawn to have both in opposite cells with threat risk to them.

12. Defendants [Sharon Clark],[Heather Halderman], [Dorina Varner], [Abbey Wasson], [Teresa Collins], [Mark Garman], [Lt. Sherman] and [Brian Makosy] all directly involved knew that plaintiff [Perry Burris] a devoted muslim and [Shawn Strawn] deeply religious were cell mates in cell (#133) on BA block and they knew the Defendants named conspired to cover up the cell agreement form and spread false rumors amongst staff and inmates on Plaintiff [Perry Burris] placing plaintiff [Perry Burris] under slander, libel and character assassination and defamation of reputation as a muslim which threatened plaintiff [Perry

Burris's] safety, and health and violated the Pennsylvania
Department of Corrections Code of Ethics and Breached the cell
agreement between Plaintiff [Perry Burris] and [Shawn Strawn]
prior to the 6 month expiration of cell agreement. SEE: Exhibit
#6.

13. Defendants [Sharon Clark], [Heather Halderman], [Counselor
Brian Makosy], [Abbey Wasson], [Teresa Collins], [Lt. Sherman],
[Mark Garman], and [Dorina Varner] each knew of Plaintiff [Perry
Burris] D-Code stability mental health disability and Plaintiff
Shawn Strawn "D" Code Mental Health stability disability and
deliberately willfully with malice based on race and ethnic
religious discrimination of plaintiff [Perry Burris] as an
African American muslim moved Shawn Strawn and placed Jack Hrynko
in the cell knowing Jack Hrynko is an inmate homosexual who is
openly connected to a transgender inmate who is housed also on BA
block NOT only was this act intentional by Defendants the second
time but knowingly threatened plaintiff's life and safety as a
known muslim inmate. SEE: Exhibit #7.

14. Defendants [John E. Wetzel] and [Dorina Varner] had every
opportunity since June 2018 through August 28, 2018 to the
present to correct the problems, the racial discrimination, the
inhumane housing of plaintiff [Perry Burris] as a muslim being
cell partners with an inmate who is connected to a transgender,
the breach of cell agreement, destruction of cell agreement, the
slander, libel and defamation of character and reputation which
Defendants John E. Wetzel and Dorina varner have been made aware
of in writing. SEE: Exhibit #8.

15. Defendants [John E. Wetzel] and [Dorina Varner] since June
2018 have not taken action to discipline any staff nor fix the
potential threat of violence to inmates by cellied inmates with
creating a solution such as cell agreement policy and De-
Escalation of violence training.

16. Plaintiff [Perry Burris] was placed in harms way multiple
times when Plaintiff [Perry Burris] confronted Defendant
[Collins] about the libel slander and defamation of character and
reputation, the Defendant Collins did not deny it but stated

-9-

"This is a Unit Team issue" The Unit Team on S.N.U BA block
includes Defendant [Sharon Clark] and PRT Psychology Review Team,
Defendants [Wasson] and [Collins]. SEE: Exhibit #9.

17. Plaintiff [Perry Burris] confronted Defendant [Sharon Clark]
about the libel, slander, defamation of character and reputation
by Defendant [Sharon Clark], [Lt. Sherman] and [MS. Wasson]
asking why plaintiff is being targeted by Unit Team and
Psychology and if there can be no cell agreement with certain
inmates then why is not Plaintiff [Perry Burris] being Z-coded,
single cell? No action was ever taken on this request. SEE:
Exhibit #10.

18. Plaintiff [Perry Burris] confronted Defendant [Lt. Sherman]
about the slander, libel, assassination of character, defamation
of reputation and once again the blame was directed at a member
of the Unit Team a counselor, there was no denial of the
potential predator theory due to plaintiff [Perry Burris] size
and picture as a Black inmate. SEE: Exhibit #11.

19. Defendants [Sharon Clark], [Wasson], [Collins], [Lt.
Sherman], [Brian Makosy] and [Mark Garman] were well aware of
inmate James Cromartie #KZ-0340 assaultive history known for
sucker punching and slapping complete strangers and is totally
psychotic to the point he does not believe in ever washing his
hands after urinating or defecating, which is known by Defendants
and this inmate James Cromartie is suppose to be housed in (RTU)
permanently  but on two separate occasions Defendants cleared
James Cromartie, KZ-0340 to be Plaintiff [Perry Burris] cell mate
with the intentions of provoking Nigger gladiator camp (Which is
to have black on black violence for enjoyment of white staff.

20. Plaintiff [Perry Burris] a muslim who believes in cleanliness
in the cell with James Cromartie who does not wash his hands
after urinating or defecating resulted into physical violence.

21. Defendants [Sharon Clark], [Wasson], [Collins], [Lt.
Sherman], [Brian Makosy], [Mark Garman], [John E. Wetzel], and
[Dorina Varner] all have the inmate record of Kennith Patterson
GB-9968 with his severe mental history of assaults, fights,
disciplinary sanctions and housing in level 5 and R.T.U. However

again, Kennith Patterson GB-9968 was selected to be put into cell with Plaintiff [Perry Burris] for nigger gladiator camp. The results was physical violence as orchestrated/predicted by Defendants.

22. Plaintiff [Perry Burris] since the removal of plaintiff Shawn Strawn as cell mate, has repeatedly been intentionally placed in harms way by incompatiable cell mates and the racism practice of being a big brute because I am black and signifying to homosexuality by staff which slander, libel and character assassination and defamation of reputation endangers my safety has not been fixed by the herein Defendants named and Plaintiff as a muslim has been subjected to both physical injury and mental trauma by fights with cell mates set up by named Defendants actions. SEE: Exhibit #12.

23. Plaintiff [Perry Burris] is still under the threat of future harm by Defendants named actions because the inmate Kennith Patterson #GB-9968 that was put into another inmate cell Edward Wright #MD-9460 cell  and viciously assaulted inmate Edward Wright #MD-9460. SEE: Exhibit #13.

CAUSES OF ACTION

Lines 1 through 23 Claim(s)
(a) Failure to Protect Health and Safety
(b) Defamation of Character
(c) Defamation of Reputation
(d) Slander
(e) Libel
(f) Racial Discrimination
(g) Religious Discrimination
(h) Breach of Contract
(I) Failure to Create a Cell Agreement Policy
(J) Failure to Implement a De-Escalation of Violence Training and Policy.

VIOLATIONS
Lines 1 through 23

Article 1 Sec. 13 PA. Constitution
Article 1 Sec. 26 PA. Constitution
8th Amendment U.S. Constitution
1st Amendment U.S Constitution
American Disability Act
Religious Land Use Institutionalized Persons Act
42 U.S.C. § 1981
42 U.S.C § 1985
42 U.S.C § 1986

## INJURIES

### Mental
1. Insomnia,
2. Paranoia
3. Emotional Stress
4. Abnormal Bow movement/Blood in Stool

### PHYSICAL
1. Swollen Jaw
2. Scars/Assaulted with pencil, bruises on ribs and legs, lumps on head
3. Headaches, dizzy spells, blurred vision
4. Swollen hands/Aching elbows

### RELIEF REQUESTED

1. Injunctive Order of Protection
2. Declaratory Judgement • Declare Plaintiff's Rights
3. Monetary Reward • Punitive Damages $50,000 dollars each Defendant and Compensatory Damages $25,000 dollars each Defendant.
4. Trial By Jury Demanded
5. Plaintiff Cost of Suit
6. Plaintiff Cost of Litigation

EXHIBIT 1

RECEIVED

DC-804      JUN 2 0 2018
Part 1    at Rockview
Supt's Assitant's Office

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
742887
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| N.S. Paul | SCI-Rockview | 6/15/18 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE OF INMATE: |
|---|---|
| Perry Burris  HU-9/32 | |

| WORK ASSIGNMENT | HOUSING ASSIGNMENT: |
|---|---|
| Block worker | BA-133 cell |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

This grievance is on Ms. Clark, Unit Manger, BA-Block, on 6/8/18. My Cellmate and I were called to her office and immediately were yelled at and treated with disdain in a disrespectful manner. Ms. Clark yelled out at us saying, "Didn't I tell you both you can't be cellies?! Who Runs this block?! Confused I asked why, What's wrong with us being cellmates? Ms. Clark response was, "your a big brute, thats why," I asked what she meant by that? Her response was, again, "your a big brute," I asked her why was there a problem with me being his celly, I had, Inmate Myatt, AKA "40" as my celly on D-Blk and he was the same size or a inch taller than Mr. Strawn. she then stated, "I'm not going to sit here and argue with you." She then moved inmate Strawn to 110 cell, with a cellmate whom was, if Not the same weight as I, and inmate Strawn in small for his age and have been fearful for pedophiles as previous cellmates. Inmate Strawn and I have a father and son type of bond and I look out for his well-being not only on BA, during movement in population as well. (see; Attachment.

B. List actions taken and staff you have contacted, before submitting this grievance.

I've spoke with Lt. Monosky, Lt. Vance, Lt. Wilts on different occasions; Also Sent a request slip to Major Haldeman about these matters,

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator                    Robe/staff   6/20/18
                                                                Wil           Date

WHITE Facility Grievance Coordinator Copy     CANARY File Copy     PINK Action Return Copy
GOLDEN ROD Inmate Copy

Major Haldeman
7-12

*Attachment 1-A*

EXHIBIT 2

## ATTACHMENT

Ms. Clark did not treat myself and Mr. Straun in an intellectual or humane manner, nor was it unbiased or impartial. It is known that she is in charge. However, her actions in nullifying the cell agreement before it reached its expiration date of six months, this shows that she has no regard for policy and also placed undo mental strain, as well as inflicting cruel and unusual punishment, upon me. I had spoken with Sgt. Bloom about a cell agreement with Mr. Straun long before approaching Ms. Clark. He accepted to accomodate my request, but was moved to 6-2 shift before the move could take place. Upon Sgt. Bloom working 6-2 shift on BA one morning, he noticed me in the cell and I asked him if he could move Mr. Straun to my cell and he did. However, Ms. Clark decided to move Mr. Straun out 2½ weeks later and placed me in harm's way when she moved inmate Hrynko back into my cell when he got out of the hole, knowing that he and I previously had problems that resulted in my moving out, we had almost come to blows. It is my belief that Ms. Clark moved Mr. Hrynko back in my cell as a retaliatory action for the prior cell agreement I had with Mr. Straun. If she claim to not know about Mr. Hrynko moving in with me, then why did she say to me; "You need to start getting along with people," when I spoke to her the very day Mr. Hrynko was placed in my cell after his release from RHU? My reply was that though I've been incarcerated for over a decade, I've not had problems with any of my prior cellies save one, prior to Mr. Hrynko, and that I did not have any problems with Mr. Straun. In response to that, she replied: "Well, deal with it, he's not going anywhere."

As men, Mr. Hrynko and I are trying our best to cope with each other until the situation can be rectified. With Mr. Straun and I both behaving in a respectful manner towards one another, I don't know why he was moved. It is my belief that Ms. Clark targeted myself and Mr. Straun for reasons unknown. Ms. Clark is part of a broader conglomerate that is supposed to promote peace, safety and security of those under her care, but has in fact, done quite the opposite by moving Mr. Straun out and putting Mr. Hrynko in with me whom I had issues with previously.

The unprofessional and disrespectful treatment of me by name calling, hollering, being disdainful toward me, and creating a potentially volatile situation was completely uncalled for. Also, for a Unit Manager of a Special Needs Unit (SNU) to behave that way by antagonizing inmates on such a block further victimizes myself and Mr. Straun by exacerbating prior existing psychiatric issues in both. Additionally, such treatment is in direct violation of the "D.O.C Code of Ethics" Under section B, Subsection 1 which states: "Each employee of the Department of Corrections (DOC) is expected to subscribe to the principle that something positive can be done for each inmate. This principle is to be applied without exception. This involves an intelligent, humane and impartial treatment of inmates. Discriminatory treatment will not be tolerated. Corporal punishment shall not be utilized under any circumstances." Also, it violates the treatment of people with serious mental health illness (13.8.1).

I ask that the Retaliatory Clause be implemented for this grievance; meaning that any and all undocumented meetings including but not limited to work, cell, meal line, disruption of mail, cell transfers, could be seen as a violation of my Eighth Amendment Right of The United States Constitution.

Prayer for relief, to keep potential problems from myself and for my former cell mate Mr. Straun, to be allowed to cell up together without bias, it is established that we can get along harmoniously. I also seek compensation from Ms. Clark for promoting cruel and unusual punishment, defamation, retaliation and discrimination of $1,000,000 dollars of U.S. Currency from Ms. Clark and the Department of Corrections.

Parry Burris, HU-9132

EXHIBIT 3



→ **INITIAL REVIEW RESPONSE** ←
→ SCI-Rockview ←
Box A
Bellefonte, PA  16823

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows

| Inmate Name: | Perry Burris | Inmate Number: | HU9132 |
|---|---|---|---|
| Facility: | SCI-Rockview | Unit Location: | B-A-1033-01 |
| Grievance #: | 742887 | Grievance Date: | 6/15/2018 |

**Publication (if applicable):** N/A

| Decision: | ☐ **Uphold Inmate** |
|---|---|
| | ☒ **Grievance Denied** |
| | ☐ **Uphold in part/Denied in part** |

*It is the decision of this grievance officer to uphold, deny **or uphold in part/deny in part** the inmate's initial grievance. This response will include a brief rationale, summarize the conclusion, any action taken to resolve the issue(s) raised in the grievance and, relief sought.*

| **Response:** | | *Frivolous* |
|---|---|---|

I have reviewed your grievance, policy, code of ethics, and have interviewed Ms. Clark and CC Makosy. You claim that Ms. Clark behaved in an unprofessional manner, placed you in a potentially dangerous situation with Inmate Hrynko when she celled you together, and she breached a cell agreement made between you and Inmate Strawn. You ask to be celled with Inmate Strawn and for monetary compensation of one million dollars.

On June 8, 2018, Ms. Clark discovered that you and Inmate Strawn were celling together. Both you and Inmate Strawn were called into her office with CC Makosy present, and informed that this move was made without her knowledge and that no cell agreement was found. Both of you were informed that the reason you would not to be celled together was because of the "Imbalance of Power" concerns. At that time, Inmate Strawn was moved to an open bed on BA Unit. On June 11, 2018, the open bed in your cell was filled by Unit Staff with an inmate released by PRC. Within a couple of days, Ms. Clark was approached by you and Inmate Hrynko about both of you not getting along. Both were informed to find someone to live with and she would review the move for appropriateness, or she would move one to another cell/bed when one becomes available. On June 28, 2018, Inmate Hrynko was moved to a different cell. On June 28, 2018, the available bed in your cell was filled by an inmate that PRC released to BA. Since then, there have been no complaints from you about this new cellie. Ms. Clark denies being unprofessional when speaking with you.

Per the 2017 DOC Inmate Handbook, "It is your responsibility to inform staff of any preferences you have about your cell assignment. A preference filed by you will be assessed by staff, but not necessarily granted." No cell agreement was found with her approving you to reside together. Therefore, there was no breach of a cell agreement. Cell agreements are not part of policy. There is ongoing staff training for celling inmates. Unfortunately, you are not happy with her decision to not cell you and Inmate Strawn together. As far as placing you in a potentially dangerous situation, nothing happened between you and Inmate Hrynko during you stay together. According to our training, you and Inmate Hrynko were celled together appropriately. You failed to resolve your celling issue on your own, and Ms. Clark moved Inmate Hrynko as soon as she could. Ms. Clark denies making the statements in your report and being unprofessional. A/CC Makosy's interview confirms Ms. Clark's version of events on June 8, 2018. I find no violation of policy and code of ethics.

As for your relief sought, your request to cell with Inmate Strawn is denied due to an imbalance of power and the financial compensation you requested is also denied.

| Signature: | H. Haldeman | *H. Haldeman   COS* |
|---|---|---|
| Title: | Major of Unit Management | |
| Date: | July 11, 2018 | |

cc:  Facility Grievance Coordinator   DC-15   File

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 1 – Grievances & Initial Review**
Issued: 1/26/2016
Effective: 2/16/2016

*Attachment 1-D*

Exhibit 4

GRIEVANCE APPEAL

State Correctional Institution

TO: SuperINtendent GARMAN

RECEIVED

GRIEVANCE # 742887

JUL 26 2018

at Rockview
Supt's Assistant's Office

I, Perry Burris, am hereby appealing the response to grievance number: 742887. The Major of Unit management, Ms. Heather Haldeman, was assigned grievance officer. A response by her is a conflict of interest considering she was in fact a Staff member I had contacted prior to filing grievance # 742887. Respondent Superns, which is Latin for "let the superior reply," is a legal term that would leave Ms. Haldeman responsible for Ms. Sharon Clark's actions along with any other of her subordinates. Not only does this further show conflict of interest but also that there is a collusion within the ranks at SCI-Rockview.

I also appeal Ms. Haldeman's allegation that the initial grievance is "frivolous," The legal definition for frivolous is as follows: Clearly insufficient as a matter of law; obviously Lacking in Substance. In 1974 the supreme court made clear that prisoners do not forfeit all Constitutional protection by reasons of their conviction and confinement; see: Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Pell v. Procunier, 417 U.S. 817, 822 (1974) which states: (A prisoner retains those rights "that are not inconsistent with his status as a Prisoner or with the legitimate penological objectives of the correction system"). Cruel and unusual punishment is in fact a protected liberty of the Eighth Amendment to the U.S. Constitution. The cruel and unusual punishment inflicted by a prison official and collusion was in fact failure-to-protect. The court held that prison officials have a duty to protect prisoners from violence at the hands of other inmates. IN Farmer v. Brennan, 511 U.S. 825, 833 (1995). Farmer also states that inmates "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate, it is enough that the official acted or failed to act despite his/her knowledge of a substantial risk of serious harm, "Id." 842. Ms. Clark's deliberate indifference will be held liable under the Eighth Amendment. She not only had knowledge of the substantial risk of harm I faced while celled back up with inmate Arynd but also failed to take reasonable measures to abate it.

→ Ms. Clark Kept us celled together from June 11, 2018 to June 28, 2018. This was seventeen days that I had to keep from taking my psych meds, which NOW I am completely FF, so that I can stay alert enough to protect myself. She was told numerous of times of the substantial risk of serious harm I faced, these same risks are the reason why I was moved out of his cell prior to when she moved him back up.

— OVER —

As Ms. Haldeman quoted from the 2017 Doc inmate handbook, "It is your responsibility to inform staff of any preferences you have about yourself. A preference filed by you will be assessed by staff but not necessarily granted." I tried to resolve this calling issue the very morning of June 11, 2018 by confronting unit manager, Ms. Clark, (check camera), she became aware of the potential danger I faced, there should/could have been an emergency move. Just because I held my composure during them 17 days that made Hrynko was my celly it does not trump the potential danger that I was in. Nor does it trump Ms. Clark's deliberate indifference by allowing me to be in harms way for 17 days, I could not let my guard down while locked in with inmate Hrynko which in turn effected my everyday lifestyle and mental health state.

Major Haldeman stated that I am not happy with Ms. Clark's decision to not cell inmate Shrum and I together, yet, it was actually because of that fact that I had been discriminated against, had my character defamed, and then placed with a substantial risk of harm that she placed me in by naming Mr. Shrum and placing Mr. Hrynko back in my cell. Major Haldeman also stated that she found no violation of policy and code of ethics in belief that the unit manager, Ms. Clark disavowed the claims I made are "true." Though direct violation of the "D.C. Code of Ethics" under Section 5), Subsection 1 (as quoted in initial grievance) can be proven without them acknowledging all related incidents. Placing my life in jeopardy is not "positive" or involves an "intelligent, humane and impartial treatment of inmates." It also states that "Discriminatory treatment will not be tolerated." To say that there is an imbalance of power because of my stature and size compared to inmate Shrum is discriminatory because Mr. Shrum do not judge me by my size and stature, but by my wisdom, knowledge and understanding about life behind bars, he look to me as not only as a father figure but as someone to keep guide him through during his times of hardship. The decision of Major Haldeman should be denied and my grievance should be upheld.

Paul Wang
Perry Bur(s) Hu9133

7/33/18



**Facility Manager's Appeal Response**
**SCI Rockview**
PO Box A
Bellefonte, PA 16823

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

| Inmate Name: | Perry Burris | Inmate Number: | HU9132 |
|---|---|---|---|
| Facility: | SCI-Rockview | Unit Location: | B-A-1033-02 |

| Grievance #: | 742887 |
|---|---|

| Publication (if applicable): | |
|---|---|

| Decision: | ☒ Uphold Response (UR) | ☐ Uphold in part/Deny in part |
|---|---|---|
| | ☐ Uphold Inmate (UI) | |
| | ☐ Dismiss/Dismiss Untimely | |

*It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.*

| Response: | | *Frivolous* | |
|---|---|---|---|

I have reviewed the initial grievance, the grievance officer response, and the subsequent appeal of your issues relating to problems with staff.

Major Haldeman provides you with a lengthy and thorough response. In fact, her response could have been a simple one in that "you are not entitled to any specific cell partner." While there are cell agreements available, staff review and approval is required. There is a definite imbalance of power and in my opinion, Ms. Clark was correct in denying your request. This has been explained to you in detail by the Unit Team.

Your appeal of these matters is denied.

| Signature: | | |
|---|---|---|
| Title: | Facility Manager | |
| Date: | 08/08/2018 | |

cc:    DC-15
       File

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 2 – Appeals**
Issued: 1/26/2016
Effective: 2/16/2016

*Attachment 2-B*

## INMATE APPEAL TO FINAL REVIEW
## GRIEVANCE

| INMATE NUMBER | NAME | FACILITY | DATE | GRIEVANCE# |
|---|---|---|---|---|
| HU-9132 | Perry Burris | SCI-Rockview | | 742887 |

I received my appeal from the Superintendent on ___8/9/18___ and have the following appeal issues.

### Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions.
Appeals must relate to the issue presented in the initial grievance and 1st level appeal.

### Please provide a BRIEF (no longer than two pages) appeal statement.

I, Perry Burris, am hereby appealing the facility manager's appeal response to grievance # 742887. Mr. Garman's allegation that the initial response appeal is "frivolous", is void because throughout his response he did not dispute any of my claims of Eighth Amendment violations, discrimination, defamation of my character, the substantial risk of harm I was placed in which caused cruel and unusual punishment, policy violation of the code of ethics, and the breach of Contract with the cell agreement between Mr. Strawn and I. I also clearly asserted the definition of "frivolous" in that same subsequent appeal along with Case Law to support my claims and a quotation of the D.O.C's code of ethics in which (UM) Ms. Clark violated. This is unsettling because these are the basis of the initial grievance and have not been addressed by Major Haldeman nor Superintendent Garman. This in its own right should not be enough for Mr. Garman to uphold Ms. Haldeman's initial review response to be frivolous. This response as well as Major Haldeman's response shows that there is collusion within the ranks at SCI-Rockview and that no one is trying to get to the basis of the claims. They simply by pass all claims of the grievance with deeming it to be frivolous. Yet, they are not responding properly to the claims. This grievance was not only about the cell agreement between Mr. Strawn and I, Yet, this is what each response keep harboring on. Hence, there was a cell agreement that was actually approved by staff between Mr. Strawn and I (See Att.)

INMATE SIGNATURE: _Perry R. Burris_

Inmate Appeal to Final Review

To Grievance # 742837 Continued

<u>Attachment</u>

8/9/18

When Mr. Strawn was moved from 123 cell on BA block to 133 cell on BA
Block with myself. They also harbored on "Imbalance of power" between Mr.
Strawn and I, but yet, an inmate Robinson the same stature as inmate Strawn
was celled with me following these claims of "Policy." Since me and inmate
Strawn's cell agreement was breached because of this so called "imbalance of
Power" Mr. Strawn was cell up with inmate Young a 245 pound white male,
Mr. Schenk, another 240 pound white male, both whom weigh as much as
I do. Mr. Strawn in each move told the unit manager that he was not comfortable,
Nor felt safe and secure with these moves. He specifically stated that he was
Safe and felt secure while celled up with myself. He was completely ignored.
Yet, In DC-ADM-006, III Policy (A) every inmate, including an inmate
with a qualified disability, is housed in a manner that provides his/her
Safety and Security. When inmate Strawn told her as well as his psychologist
Ms. Wesson that he did not feel safe nor secure being celled with these other
inmates each time than they are in direct violation of this policy.

Mr. Garman's rationale was without merit, because he did not need the
appeal that I sent to him. Had he done so he would not only have seen the
Violation of the Code of Ethics by (U.M) Ms. Clark, But the violation
of DC-ADM-006, Reasonable accommodations for inmates with disabilities
as well. If Mr. Strawn and I was not having any problems as cell mates
and the only Rationale to Mr. Garman's judgement was (I am "not entitled
to any specific cell partner"). Then he too is in violation of the D.O.C
Policy ADM-006 because it clearly states that I am entitled to be
housed in a manner that provides safety and security. If Mr. Strawn
told them he was safe and secure after being celled with me for 2½
weeks, why was he moved?

Mr. Hymko was moved back in the cell with me after Ms. Clark was fully
aware of a previous conflict between he and I. Yet, There was none with
Mr. Strawn and I. In doing so she did not promote safety and security
nor risk management. She placed me in harm's way because of the
substantial risk of Mr. Hymko and I getting into an alteration. Therefore
Mr. Garman's decision to uphold Response (UR) to grievance # 742837
should not be upheld, and my grievance # 742837 should be granted.
Please find the copy of both sides to my appeal inside. Mr. Garman
only sent back a copy of one side which is Received on July 26,
2018 at his office.

EXHIBIT 8

2018

**Final Appeal Decision**

**Secretary's Office of Inmate Grievances & Appeals**
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

This serves to acknowledge receipt of your appeal to the Secretary's Office of Inmate Grievances and Appeals for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to the Facility Manager, the Facility Manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Special Investigations and Intelligence, etc) may have been solicited in making a determination in response to your issue as well.

| Inmate Name: | Perry Burris | | Inmate Number: | HU9132 |
|---|---|---|---|---|
| SCI Filed at: | Rockview | | Current SCI: | Rockview |
| Grievance #: | 742887 | | | |
| Publication (if applicable): | | | | |

| Decision: | ☒ Uphold Response (UR) |
|---|---|
| | ☐ Uphold Inmate (UI) |
| | ☐ Uphold in part/Deny in part |

*It is the decision of the Secretary's Office of Inmate Grievances and Appeals to uphold the initial response, uphold the inmate, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.*

**Response:** *Frivolous*

You claim that on 6/8/2018, Ms. Clark called you and your cellmate to her office and proceeded to yell at you both, treat you with distain, and in a disrespectful manner. You say that she said that you are a brute, which is why you should not be housed with Inmate Strawn. You state that she then moved Inmate Strawn to another cell and you feel that this was out of retaliation and a violation of your 8th constitutional amendment rights. You request to be allowed to cell with Inmate Strawn and compensation from Ms. Clark in the amount of $1,000,000.00.

A review of the record found that Ms. Clark and CC Makosy, who was also present on 6/8/2018, were interviewed about your allegations. It was found that she had no prior knowledge of you and Inmate Strawn being cellmates and there was no cell agreement. Therefore, Inmate Strawn was moved to another cell. Ms. Clark denied being unprofessional as you claim, and CC Makosy confirmed this. You fail to provide any evidence to substantiate your claims. Housing assignments are based upon the safety and security of the institution, the staff, and the inmates. Your grievance and requested relief are denied.

| Signature: | Dorina Varner |
|---|---|
| Title: | Chief Grievance C─── ─er |
| Date: | 8/28/2018 |

DLV/HIS
cc: DC-15/Superintendent Garman
     Grievance Office

EXHIBIT 9

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1: To: (Name and Title of Officer)<br>Ms. Collins (M.H.) Coordinator | 2. Date:  8/1/18 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>Perry. Burris Hu-9132<br>_Perry Burris_<br>Inmate signature | 4. Counselor's Name<br>MR. MAKOSY |
| | 5. Unit Manager's Name<br>Ms. CLARK |
| 6. Work Assignment<br>BA BLK WoRKeR  pm | 7. Housing Assignment<br>BA B3 cell |

8. Subject:  State your request completely but briefly. Give details.

Miss Collins, I am writing in reference to my being Characterized as being a potential predator. I do not know where this is coming from, but what I do know is that since I had celled up with Inmate Strawn my character have been defamed by the unit manager on BA Ms. Clark, I was told that it was "highly inappropriate" to be Inmate strawn's cell mate, and finally I was told that I was a potential predator and could not be celled up with Inmate Strawn because of my size and stature. First and foremost, I am not a predator Nor do I have plans on being predatory, My history of Crime is due to drug and alcohol abuse which is Inexcusable. But, for the most part since being arrested as a juvenile I been Charged with Burglary, Robbery and aggravated assaults, No one was with women, Nor little boys, So, Please get back to me and tell me who I am being deemed a Potential Predator, I know it's not because of my recent Charge of Rape w which I am falsely accused of.

TC; File

| 9. Response: (This Section for Staff Response Only) |
|---|

Mr. Burns,

→ This is a unit team issue, so I am forwarding this to your unit team.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name  __T Collins.__ , __T Collins PS__   Date  8/7/18
           Print             Sign

Revised July 2000

EXHIBIT 10

Received 7/23/18

| **Form DC-135A**<br><br>**INMATE'S REQUEST TO STAFF MEMBER**<br><br>135 | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1: To: (Name and Title of Officer)<br>Ms. Clark BA Unit Manager | 2. Date:<br>7/15/18 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>Perry Burris HW9/33<br>Perry Burris<br>Inmate signature | 4. Counselor's Name<br>Mr. Mukosy<br>5. Unit Managers Name<br>CLARK |
| 6. Work Assignment<br>BA-Blockworker | 7. Housing Assignment<br>BA |

8. Subject: State your request completely but briefly. Give details.

Ms. Clark, I am writing in reference to my being able to get a z-code, Since, I have been suddenly targeted not only by the BA block unit manager and team, but by the mental health faculty as well. I would like to be given a z-code. Reason being; 1) I am not allowed certain inmates as my cellmate 2) You called me yourself a big brute (3) Lt. Sherman stated to another inmate that I was a potential predator. 4), Ms. Wasson told inmate straw? that it is "highly inappropriate" for him to be my celly; and (5) Because, of all of these reasons no one should be celled up with me. Please, get back to me and let me know about getting a z-code. Thank you in advance for your time.

CC; File

9. Response: (This Section for Staff Response Only)

Process to be initiated by your counselor.

Forward request to DOC Kelsey Bender + Psy

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / ___(signed)___ Date 7/27/2018
                        Print                Sign

Revised July 2000

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1: To: (Name and Title of Officer)
Lt. Sherman "Security"

2. Date: 8/1/18

3. By: (Print Inmate Name and Number)
Perry Burris HY-9132
_Perry Burris_
Inmate signature

4. Counselor's Name
MR. MAKOSY

5. Unit Manager's Name
MS. Clark

6. Work Assignment
BA. BLK-Worker pm

7. Housing Assignment
BA 133

8. Subject: State your request completely but briefly. Give details.

Lt. Sherman,
I would like to know why am I all of a sudden being deemed a potential predator by you and other members at the administration at SCJ-Rockview. When I spoke to you on 7/12/18 and you told me that you looked at my picture and saw my size and stature, you stated that I was big and that I shouldn't be called in with inmate Strawn. Can you further explain why is that when before that day you looked at my picture I probably wasn't a thought in your mind because I am not a problem and never was a problem since I've been in this prison especially when it comes to being predatory. I am not a predator. Please get back to me and let me know how you suddenly deemed me to be such. Thank you in advance for your time and consideration into this matter of mines. CC: FILE

9. Response: (This Section for Staff Response Only)
Speak with your counselor about your PRAT. I have nothing to do with your PRAT.

CC: File

To DC-14 CAR only ☐

To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ / _____   Date _____
Print                              Sign

Revised July 2000

EXHIBIT 12

## DECLARATION IN SUPPORT OF PERRY BURRIS

I, <u>Shawn Strawn Jr.</u>, being duly sworn according to law, here by depose the following facts:

1). On May 10, 2018 I asked Ms. Sharon Clark if I may be moved with Mr. Burris.

2). She referred to such a cell agreement between Mr. Burris and I to be "Highly Inappropriate" However, Sergeant Bloom allowed us to move in together several weeks later.

3). On June 8th, 2018 Mr. Burris and I at the time was celled together in 133 cell and was called to Ms. Clark's office.

4). She had called us into her office to meet with her and Mr. Makosy, She then immediately began scolding us and yelling at us in an unprofessional manner.

5). She started rhetorically yelling "Who runs this block!"

6). Ms. Clark then stated that Mr. Burris and I can no longer be cell-mates.

7). Mr. Burris responded by asking her "Why can't we be cellies?"

8). At this point Ms. Clark defamed him by yelling "<u>You're a Big Brite</u> that's why!"

9). She also yelled "<u>I know what's really going on.</u>"

I, <u>Shawn L. Strawn Jr.</u>, hereby declares under penalties of perjury the statement is true and correct to the best of my knowledge, understanding and belief, under 18 Pa.C.S § 4904.

Shawn Strawn Jr.

DATE: 2 / 18 / 2019

DECLARATION IN SUPPORT OF PERRY BURRIS

I, Shawn Strawn Jr., being duly sworn to law hereby depose the following facts:

1). On July 11th, 2018 I had a PREA interview with Lieutenant Sherman at the security department (DW).
2). Lt. Sherman stated that Mr. Burris' and my "Stats" are not compatible.
3). He expressed that this was because Mr. Burris' "Stat" showed him to be a potential predator and mine to be a potential victim.
4). Lt. Sherman, like Abbey Wasson, agreed with Unit Manager Sharon Clark that a living arrangement between Mr. Burris and I is "highly inappropriate".
5). When I asked Lt. Sherman about how Mr. Young, a convicted pedophile who is about the same stature as Mr. Burris if not the same weight, can be celled together with me, he stated that Mr. Young's "Stat" and mines are a match.
6). Lt. Sherman acknowledged my stature, by stating that I am "five feet, a hundred pounds soaking wet", my child like appearance, and that I am not a pedophile.
7). The following day, July 12, 2018, Mr. Burris and I were headed towards the chow hall for lunch when we confronted Lt. Sherman about the event of the previous day for further insight.
8). Mr. Burris then asked Lt. Sherman why did he tell Mr. Strawn that he (Mr. Burris) was a potential predator?
9). Lt. Sherman honestly stated to Mr. Burris that he made a judgement solely on his mugshot, height, and weight, that Mr. Burris was an "Imbalance of Power" concern.
10). Mr. Burris then asked him again, "Where do you get this potential predator theory from?" to which he replied "Look, I don't agree with Ms. Clark either, I don't care if you were cellies or not. "It's her block".
11). Mr. Burris then asked Lt. Sherman, "So, you're telling me that he (Mr. Strawn) is safer on the bottom bunk in a cell with a 240 pound white man that is a pedophile and is locked up for molesting his nephew, then he is with me?" to which Lt. Sherman replied "Yes!" and walked away.

I, Shawn Strawn Jr., hereby declares the foregoing is true and correct under the penalties of perjury 18 Pa.C.S. §4904.

DATE: 2 / 18 / 2019

Shawn L. Strawn Jr.

EXHIBIT 13

DECLARATION IN SUPPORT OF PERRY BURRIS/SHAWN STRAWN JR.

I, <u>Edward Wright</u>, # MD-9460 hereby declares the following:

1. On 11/22/18 I made Sharon Clarrk Unit Manager of BA-SNU aware that my cellmate was hostile, violent and endangering my safety and that I needed to be moved.

2. Sharon Clark Unit Manager of BA-SNU ignored the request slip I wrote and never answered nor returned it and she told me that moving was not a top priority in person.

3. As a result of Sharon Clark Unit manager of BA-SNU not taking action on 11-29-18 my cell mate Kennith Patterson attacked me with a lock in a sock. I had to go to the hospital and received 4 staples in my head.

I, <u>Edward Wright</u>, # MD-9460 hereby declares under penalties of perjury the statement is true and correct to the best of my knowledge, understanding and belief, under 18 Pa.C.S § 4904.

_Edward Wright_

Edward Wright

DATE: 2 / 17 / 19

PART II FACTS

24. Plaintiff [Shawn Strawn] a first time offender who is 5 feet 3 inches and weigh 105 pounds in June 2018 was repeatedly forced against his will by Defendant [Sharon Clark] to be cell mates with numerous pedophile inmates in spite of the risk of prison rape and sexual assault.

25. Defendant [Sharon Clark] would have Plaintiff [Shawn Strawn] issued a disciplinary report for misconduct and Plaintiff would be disciplined and risk being denied parole if Plaintiff [Shawn Strawn] did not comply with orders to be cell mates with pedophiles (Thorne), (Hutchings) and (Young).

26. Defendants [Brian Makosy], [Abbey Wasson], [Lt. Vance], and [Heather Halderman] were each directly informed between June 8th, June 9th, June 10th and June 18th, 2018 of the repeated danger and threat risk of housing Plaintiff [Shawn Strawn] a vulnerable small disability inmate D-Code stability status and African American inmate with big pedophile white inmates but none of the defendants took steps to do anything but collude in Defendant [Heather Halderman] answering the complaint [Heather Halderman] is named in as being involved in, SEE: Exhibit #19

27. Defendants [Sharon Clark], [Brian Makosy], [Abbey Wasson], [Lt. Vance], and [Lt. Sherman] were all aware of Plaintiff [Shawn Strawn] size and that big white inmates could prey on Plaintiff [Shawn Strawn] and decided intentionally to not allow [Shawn Strawn] to be protected from them by being cell mates with friend and father figure Plaintiff Perry Burris who is black and big. SEE: Exhibit #15

28. Plaintiff [Shawn Strawn] father and mother have talked with Plaintiff [Perry Burris] and were only comfortable with [Perry Burris] in the cell with their son for safety and when Plaintiff [Shawn Strawn] mother called Defendant [Lt. Vance] due to son [Shawn Strawn] being removed from [Perry Burris] cell and put in with [Pedophile] inmate a conspiracy was formed between Defendants [Sharon Clark], [Brian Makosy], [Lt. Vance], [Abbey Wasson] and [Heather Halderman] to fabricate that their was a

imbalance of power between two black inmates Plaintiff [Perry
Burris] and Plaintiff [Shawn Strawn] with absolutly NO proof, NO
rationale and NO records of such abuse of imbalance of power
other than racism and religious hatred against Plaintiff [Perry
Burris] and Defendant [Heather Halderman] attempt to cover up on
a grievance that [Heather Halderman] is listed in. SEE: Exhibit
#16

29. Defendants [Sharon Clark], [Brian Makosy], [Abbey Wasson],
[Heather Halderman], [Lt. Sherman] and [Lt. Vance] use race based
discrimination by claiming Plaintiff [Perry Burris] who is black,
cannot be cell mates with Plaintiff [Shawn Strawn] who is black
due to size which is an imbalance of power but on the contrary
Defendants named put Plaintiff [Shawn Strawn] in cell with all
big white guys (Christopher Schenk), (Walter Raven), (Harry
Thorne), (Dale Hutchings), and (Victor Young) all bigger than
Plaintiff [Shawn Strawn] and three of them being pedophiles.

30. Defendant [Heather Halderman] who was named in box B of the
grievance and had personal involvement prior to the grievance
against PA DOC Policy DC-ADM 804 answered the grievance and
colluded with Defendant [Sharon Sharon] to not uphold inmate
Plaintiff [Shawn Strawn] on the 10 days June 8th to June 18th,
2018 again Plaintiff [Shawn Strawn] was forced to be cell mates
with a pedophile, the Defendant [Mark Garman] had knowledge of
this and could have fixed this in grievance appeal procedure but
ignored to do something about it. SEE: Exhibit #17

31. Defendant [Mark Garman] never took any action on Plaintiff
[Shawn Strawn] being cell mates with pedophiles when it was
(Harry Thorne), when it was (Dale Hutchings), when it was (Victor
Young) at no time did Defendant [Mark Garman] take action against
Defendants [Heather Halderman] or [Sharon Clark] or [Abbey
Wasson] in spite of the danger to Plaintiff [Shawn Strawn]
safety. SEE: Exhibit #18

32. Defendant [Mark Garman] permitted Defendant [Heather
Halderman] against PA DOC Policy DC-ADM 804 to answer a grievance
#742890 that [Heather Halderman] is in box B also Defendant
[Heather Halderman] in answer stated there is NO cell agreement

Policy. Defendant [Mark Garman] while covering up for Defendant [Heather Halderman] says Policy is in place for double celling and while stating Defendant [Heather Halderman] can answer her own grievance the Defendant [Mark Garman] gives Plaintiff the option of choosing solitary confinement under DC-ADM 802 in order to be safe from pedophile cell mates? SEE: Exhibit #19

33. Defendants [John E. Wetzel] and [Dorina Varner] being informed of Plaintiff [Shawn Strawn] report of Code of Ethics violations Breach of Contract with cell agreement with Plaintiff [Perry Burris the risk management and safety and security being violated by the housing of Plaintiff [Shawn Strawn] in with Pedophiles 3 times such as inmate Young violated DC-ADM 006 Section 3 and that Defendant [Mark Garman] suggested solitary confinement under DC-ADM 002 as an option was all presented by Plaintiff [Shawn Strawn]. SEE: Exhibit #20

34. Plaintiff [Shawn Strawn] presented to Defendants [John E. Wetzel] and [Dorina Varner] the dangers of solitary confinement as an option to being cell mates with pedophiles. SEE: Exhibit #21

35. Defendants [John E. Wetzel] and [Dorina Varner] took NO action on investigating why 5 white inmates bigger than Plaintiff [Shawn Strawn] was forced to be cell mates, (Harry Thorne, Dale Hutchings, Victor Young, Christopher Schenk, and Walter Raven) 3 of which are pedophiles but the only black inmate that Plaintiff [Shawn Strawn] was comfortable with (Perry Burris) was terminated by Defendant [Sharon Clark] and their cell agreement that was signed mysteriously was destroyed? SEE: Exhibit #22

36. Plaintiff [Shawn Strawn] had informed Defendant [Heather Halderman] about both affects and threats suffered by moving Plaintiff [Shawn Strawn] away from Plaintiff [Perry Burris] and in with pedophiles but all Defendant [Heather Halderman] did was send Plaintiff [Shawn Strawn] request slip to Defendant [Sharon Clark]. SEE: Exhibit #23

37. Defendant [Abbey Wasson] knew of the serious substantial risk to Plaintiff [Shawn Strawn] posed by inmate Young and other pedophiles but continued to collaborate with Defendant [Sharon

-15-

Clark] playing ignorant to statements made verbally when confronted to clarify in writing. SEE: Exhibit #24

38. Plaintiff [Shawn Strawn] made the Defendant [Heather Halderman] aware that Plaintiff [Shawn Strawn] was being sexually harassed by Defendant [Sharon Clark] and Plaintiff [Shawn Strawn] requested the Defendant [Heather Halderman] refund stolen funds???? to Plaintif [Shawn Strawn] was denied. SEE: Exhibit #25

39. Defendants [Heather Haldeman] and [Lt. Sherman] personally had knowledge of Plaintiff [Shawn Strawn] reports of retaliation for grievance #742890 against Defendant [Sharon Clark], Sexual Harassment three times by Defendant [Sharon Clark] and a conspiracy with defendants [Sharon Clark], [Brian Makosy] and Defendant [Phillips] setting Plaintiff [Shawn Strawn] up with a falsified misconduct informal resolution where Plaintiff [Shawn Strawn] was coerced to sign over funds or risk being denied parole over misconduct report. SEE: Exhibit #26

40. Plaintiff [Shawn Strawn] asked to be protected with a single cell based off Defendants [Lt. Sherman], [Abbey Wasson], [Lt. Vance] and [Sharon Clark] all feeling that Plaintiff [Shawn Strawn] is at risk of victimization, however, Defendant [Brian Makosy] never processed the Z-Code single cell to protect Plaintiff [Shawn Strawn]. SEE: Exhibit #27

41. Plaintiff [Shawn Strawn] was told by Defendant [Abbey Wasson] that Z-Code single cells are not given for those with psychological reasons in spite the opposite being true. SEE: Exhibit #28

42. Defendant [Jane Doe/John Doe statewide PREA Coordinator] was made aware of Plaintiff [Shawn Strawn] abuse as well as Defendant [Lt. Sherman] which included sexual harassment by staff Defendant [Sharon Clark] and retaliatory misconduct by Defendant [Phillips] and attempts to stop PREA investigation by Defendant [Lt. Sherman] but the [Statewide PREA officer Jane Doe/John Doe] Defendant never took action on the report of Plaintiff [Shawn Strawn]. SEE: 2 Page Exhibit #29

43. Defendant [Teresa Collins] was aware of the power imbalance of pedophiles being call mates with Plaintiff [Shawn Strawn] and

-16-

told that psychiatric medication would be refused because
Plaintiff [Shawn Strawn] was not safe. SEE: Exhibit #30

44. Plaintiffs [Shawn Strawn] and [Perry Burris] mailed out to 11
total outside organizations of which some of them contacted the
Defendant [Sharon Clark] and the other Defendants [Abbey Wasson],
[Brian Makosy], [Heather Halderman], [Lt. Vance], [Lt. Sherman],
[Mark Garman], [K Bowman], [Teresa Collins], [Dorina Varner] and
[John E. Wetzel] who were each aware of this matter that the
outside organizations contacted the PA.DOC officials about. SEE:
Exhibit #31

45. Defendant [Nikki Paul] conspired with defendants [Sharon
Clark] and [Heather Halderman] again to obstruct grievance
investigation under DC-ADM 804 by assigning the retaliation
grievance to Defendant [Heather Halderman] #751398 was a follow
up to grievance #742890 which Defendant [Heather Halderman] was
mentioned in box B and involved in.

46. Plaintiff [Shawn Strawn] filed #751398 grievance for
retaliation on Defendant [Sharon Clark], [John Doe Sgt. 6/9/18],
[John Doe Lt. 7/21/18], and [Jane Doe Nurse 7/21/18] for actions
of deliberate indifference to serious medical needs such as skin
care, eye care, and passing out. SEE: Exhibit #33

47. Defendants [Sharon Clark], [Abbey Wasson], [Brian Makosy],
[Teresa Collins], [Heather Halderman], and [K. Bowman] all knew
about this abuse. SEE: Exhibit #32

48. Defendants [Nikki Paul], [Sharon Clark] and [Heather
Halderman] conspired to cover up the abuse through Defendant
[Heather Halderman] who not only denied grievance but
fraudulently concealed the identities of the abusers to Plaintiff
[Shawn Strawn] who never got names of Defendants [John Doe Sgt.
6/9/18], [John Doe Lt. 7/21/18] and [Jane Doe Nurse 7/21/18].
SEE: Exhibit #34

49. Defendants [Nikki Paul] and [Heather Halderman] never
released the identities of employees state actors grieved in
grievance #751398 and when Plaintiff [Shawn Strawn] sent in a
timely appeal to Defendant [Mark Garman] there was never an
appeal answer received back after that, so the grievance #751398

exhausted procedurally at that point.

50. Defendants [Nikki Paul], [Heather Halderman], [Heather Halderman], [Sharon Clark], [Lt. Sherman], [Brian Makosy], [Trisha Pilosi] and Defendant [Phillips] engaged in a cover up to destroy an investigation into a grievance about retaliatory conduct for complaint #742810 and complaints involving [Sharon Clark] and other named Defendants on 7/21/18 that Plaintiff [Shawn Strawn] submitted to Defendant [Nikki Paul]. SEE: Exhibit #35

51. Plaintiff [Shawn Strawn] grievance that was submitted 7/27/18 Exhibit #35 and destroyed by Defendant [Nikki Paul] concerning the conspiracy of Defendant [Sharon Clark] and Defendant [Phillips] to retaliate with a false misconduct report in which Plaintiff [Shawn Strawn] was not able to submit evidence of a video camera footage of innocence and Plaintiff [Shawn Strawn] personal account funds were assessed. SEE: Exhibit #36

52. Defendant [Phillips] wrote a falsified report on Plaintiff [Shawn Strawn] based on conspiratorial retaliation on behalf of Defendant [Sharon Clark] and other Defendants. SEE: Exhibit #37

53. Defendants [Sharon Clark], and [Brian Makosy] conducted an Informal Resolution Hearing on the falsified disciplinary report that Defendant [Phillips] manufactured and Plaintiff [Shawn Strawn] was forced to attend and participate in and could not present evidence of video camera footage evidence which is allowed at Formal Disciplinary Hearings under DC-ADM 801 Policy. SEE: Exhibit #38

54. Defendants [Sharon Clark] and [Brian Makosy] told Plaintiff [Shawn Strawn] a first time offender, if Plaintiff [Shawn Strawn] did not sign a cash slip the Defendants [Sharon Clark] and [Brian Makosy] could take parole because Plaintiff [Shawn Strawn] needs Defendants recommendations for Parole. So Plaintiff [Shawn Strawn] was coercively forced to sign cash slip against his free will. SEE: Exhibit #39

55. Plaintiff [Shawn Strawn] personal funds in account was assessed by coercive force by Defendant [Sharon Clark] who sexually harassed and threatened parole denial of Plaintiff

[Shawn Strawn]. <u>SEE: Exhibit #40</u>

56. Defendants [John E. Wetzel] and [Trisha Pilosi] run a Policy DC-ADM 801 that does not allow Plaintiff [Shawn Strawn] to have minimum mandatory standards rights to retrieve video footage evidence at Informal Resolution Hearings or any basic due process rights afforded in a Formal Disciplinary Hearing and thus, the Informal Hearing Process is a sham and fundamentally unfair because no witnesses can be called, no evidence submitted, no representation and no appeals and Defendant [John E. Wetzel] refuses to Amend Policy DC-ADM 801 Policy to give these protections to Informal Resolution Hearings before Plaintiff [Shawn Strawn] personal inmate account can be assessed funds.

57. Defendant [John E. Wetzel] has a statewide system problem of inmate assaults on inmates that are cell mates after staff members are aware of potential danger incidents such as SCI Huntington where Unit Manager ignored inmate who was slashed and SCI Fayette where Unit Manager ignored inmate who was stabbed with pen by cell mate and SCI Rockview is a Historically violent documented prison with an employee raped before, with inmates raped on cell blocks and units, gang assaults, staff assaults and <u>No Policy is in place on cell mate agreements</u> and <u>De-Escalation of violence Policy</u> and <u>Training for staff members how to de-escalate cell mate attacks.</u>

58. Plaintiff [Shawn Strawn] is a D-Code stability inmate and Defendants [John E. Wetzel] and [Dorina Varner] ignored the American Disability Act, Rehabilitation Act and DC-ADM 006 Policy on Disability Inmate Accommodation for Mental Health inmates that are <u>safe</u> and <u>secure</u> by housing Plaintiff [Shawn Strawn] with big white inmate pedophiles and denying Plaintiff [Shawn Strawn] a sense of security with Plaintiff [Perry Burris] who Plaintiff [Shawn Strawn] signed a cell mate agreement with and previously was cell mates with.

59. Defendant [K. Bowman] was not suppose to breach confidential medical information with Defendant [Brian Makosy] and Defendant [Brian Makosy] was not suppose to discuss private medical information of Plaintiff [Shawn Strawn] in presence of another

person. SEE: Exhibit #40

60. Plaintiff [Shawn Strawn] who do to size and being first time offender has been under repeated serious danger of physical harm, the threat of abuse as long as Defendants [Sharon Clark], [Abbey Wasson], [Brian Makosy], [Heather Halderman], [Lt. Vance], [Lt. Sherman], [Mark Garman], [K. Bowman], [Dorina Varner] and [JohnE. Wetzel] continues to not allow Plaintiff [Shawn Strawn] a Z-Code single cell for protection or cell up with Plaintiff [Perry Burris] for security, there will be a substantial risk of a cell mate sexually assaulting or physically abusing Plaintiff [Shawn Strawn] amongst pedophiles that have repeatedly been placed in Plaintiff [Shawn Strawn] cells.

61. Defendants [Sharon Clark], [John E. Wetzel], and [Dorina Varner] have a history of ignoring substantial risk safety to inmates and this pattern can cause Plaintiff [Shawn Strawn] future victimization of irreparable harm without this Court's intervention to protect Plaintiff [Shawn Strawn] from dangerous predator pedophile cell mates in the future. SEE: Exhibit #42

CAUSES OF ACTION

Lines 24 through 61 Claim(s)

(A). Failure to Protect Health And Safety

(B). Breach of Contract Cell Agreement

(C). Defamation of Character

(D). Defamation of Reputation

(E). Slander

(F). Libel

(G). Prison Rape Elimination Act

(H). Americans With Disability Act

(I). Rehabilitation Act

VIOLATIONS

Lines 24 through 61

Article 1 Sec. 13 PA. Constitution
Article 1 Sec. 26 PA. Constitution
8th Amendment U.S. Constitution
1st Amendment U.S. Constitution
American Disability Act
Religious Land Use Institutionalized Persons Act
Rehabilitation Act
42 U.S.C § 1981
42 PA. U.S.C § 1985
42 U.S.C § 1986

INJURIES: PHYSICAL/PHYSIOLOGICAL

1. Withdrawal/depression/Derealization
2. Headaches/Extreme Sensitivity to Noise/Ringing of Ears
3. Hallucinations/Nightmares/Tremors
4. Anxiety/Blurred Vision/Stress/Weight Loss/Loss of Appetite
5. Insomnia/ Sleep Deprivation
6. Scratches/Sores/Inflamed Skin & Eyes/

RELIEF REQUESTED

1. Injunctive Order of Protection
2. Declaratory Judgement - Declare Plaintiff's Rights
3. Monetary Reward - Punitive Damages $50,000 dollars each
Defendant and Compensatory Damages $25,000 dollars each
Defendant.
4. Trial By Jury demanded
5. Plaintiff Cost of Suit
6. Plaintiff Cost of Litigation

-21-

State Correctional Institution
**RECEIVED**

EXHIBIT 14

DC-804 JUN 2 0 2016
Part 1
at Rockview
Supt's Assistant's Office

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
742890
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Ms. Nikki Paul | SCI- Rockview | 6/15/18 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE OF INMATE: |
|---|---|
| Shawn L Strawn Jr.  NA1871 | Shawn L Strawn Jr |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| BA Block worker | BA 1-10 |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

I, Shawn L Strawn Jr. is hereby grieving the Unit Manager, Ms. Clark, of BA-SNU (special needs unit) block. Throughout my time here at SCI-Rockview, Ms. Clark has not treated me with fairness, equality, and respect. It is my belief that I have been targeted and discriminated against through her own biased opinions/decisions. Also she does not have my best interest in mind by exercising safety, security, and risk management on my behalf. Ms. Clark has placed me in the cell with inmates Mr. Thorne, Mr. Hutchings, and Mr. Young. All of whom have been convicted of pedophile charges. This bothers me because of the old saying "Birds of a feather flock together." I myself do not have such charges but it can jeopardize my safety if others, inmates and Department of Corrections employees alike, assume I do because of whom I'm housed to. Just as I was housed with. One example of this has actually occurred to me one of before on June 9th, 2018 when I was in the office speaking to Ms. Clark about my most recent move. After she told me "If you don't like it, don't come to jail." a sergeant invited himself into the office and told me "Maybe you shouldn't have done what you did to that kid." As I stated before, I am not convicted of pedophilia charges nor do I have any victims who were children. If this one staff member assumed this because of who I live with, then who's to say another won't and harass and/or retaliate against me for it. (continued: Please see attachment)

**B.** List actions taken and staff you have contacted, before submitting this grievance.
I have spoken with and/or contacted the following people for relief:
Mr. Penford- Bldg BA SNU (special needs unit) block sergeant    Ms. Wasson- Psychology Dept. on Wed, June 13th
Mr. Maksy- Bldg BA SNU block counselor on Fri, June 8th    Mr. Vance- Security Dept. Captain
Ms. Clark- Bldg BA SNU block unit manager on Fri, June 8th & Sat, June 9th  Ms. Haldeman- Major via request slip on Sun, June 10th

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____          _____    6/20/18
Signature of Facility Grievance Coordinator              UM/staff              Date

WHITE Facility Grievance Coordinator Copy    CANARY File Copy    PINK Action Return Copy
GOLDEN ROD Inmate Copy

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 1 – Grievances & Initial Review**
Issued: 1/26/2016
Effective: 2/16/2016

Major Haldeman

7-12

*Attachment 1-A*

Case 1:21-cv-00421-MCC   Document 3-1   Filed 03/15/21   Page 48 of 88
Case 1:02-at-06000-UN   Document 216-2   Filed 03/08/21   Page 39 of 138
EXHIBIT 15

## ATTACHMENT

Also, who's to say an inmate didn't over hear that and/or may assume this as well and try to harm me. Aside from how this negativity affects my treatment and rehabilitation outside of the cell it also does within it. I have not been taking my psych medications, which help me cope with Anxiety and Depression, because it makes me sleep heavily and I fear that I may be sexually assaulted by my current cell mate. It is proven with statistics that 90% of pedophiles/child molesters will re-offend if given the opportunity.

→ Ms. Clark did not take the steps to try and prevent abuse by knowingly and intelligantly putting me in a potentially dangerous situation, when I felt safe and secure where I was at. (Please see: Prison Rape Elimination Act). Out of my entire time here under the supervision of Ms. Clark there was only a little over 2 weeks where I felt comfortable with my living arrangements. This short period was spent called up with Mr. Burris with whom I signed a cell-agreement contract, a contract which was then approved by the administration. Throughout this time Mr. Burris and I had great conduct towards each other, respected each other's space and got along well.

→ On Friday June 8, 2018 this 6 month contract was breached by MS. Clark. She called us into her office along with BA SNU counselor Mr. Makosy and began scolding us. She rhetorically asked "who runs this block?" After yelling that she stated that we can no longer be cell mates and that I will be moving. Mr. Burris responded by asking her: "Why can't we be cellies?" at which point she belittled him by yelling "You're a big brute, that's why!" After that I was permitted to move in with Mr. Young whom I have referred to above. I immediatly felt uncomfortable with this living arrangement and sent a request slip to my psychiatrist, Ms. Wesson. We met on Wednesday June 13th, 2018 and I told her about my situation. She agreed that my new living arrangement was an issue and told me that she would speak to Ms. Clark personally to get him moved and/or give me a temporary (Z-CODE) Considering how small I am. Ms. Clark also acknowledged the fact that I am in her own words "Weak, Fragile and Tiny" as well as Security Lt. Vance. That afternoon she checked back in with me and stated that Ms. Clark will not move him even after being re-informed of the risks. I have personally been victimized by Ms. Clark and even witnessed her victimize Mr. Burris. Her actions have been unprofessional and contradicting. Such treatment is a direct violation of (D.O.C.) Code of Ethics under Section 3, Subsection 1 which states: "Each employee of the Department of Corrections is expected to subscribe to this principle that something positive can be done for each inmate. This principle is to be applied without exception. This involves an intelligent, humane, and impartial treatment of inmates. Discriminatory treatment will not be tolerated. Corporal punishment shall not be utilized under any circumstances." I ask that the retaliation clause be implemented within this grievance; Any and all undocumented meetings including but not limited to work, cell, meal line, disruption of meal, cell transfers could be seen as a violation of my Eighth Amendment Right of The United States Constitution.

The relief I am seeking is to finish the cell-agreement with Mr. Burris for the duration of my time. Secondly, to be able to let my worried family know that I am safe, and secure. And lastly, I seek compensation for pain and suffering, cruel and unusual punishment, defamation of character, discrimination, retaliation, and endangering the well being of and inmate/mental health patient. I ask for $1,500 dollars of U.S. Currency for every day I had to metaphorically sleep with one eye open and $1,000,000 dollars of U.S. Currency from Ms. Clark and the Department of Corrections.

Shawn L. Straun Jr.

Shawn L. Straun Jr., NA-1871

EXHIBIT 16

# INITIAL REVIEW RESPONSE
SCI-Rockview
Box A
Bellefonte, PA  16823

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows

| Inmate Name: | Shawn Strawn | Inmate Number: | NA1871 |
|---|---|---|---|
| Facility: | SCI-Rockview | Unit Location: | B-A-1050-02 |
| Grievance #: | 742890 | Grievance Date: | 6/15/2018 |
| Publication (if applicable): N/A | | | |

**Decision:**
☐ Uphold Inmate
☒ Grievance Denied
☐ Uphold in part/Denied in part

*It is the decision of this grievance officer to uphold, deny or uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, summarize the conclusion, any action taken to resolve the issue(s) raised in the grievance and, relief sought.*

**Response:**                                                                                     *Frivolous*

I have reviewed your grievance, policy, code of ethics, and have interviewed Ms. Clark and CC Makosy. You claim that Ms. Clark's refusal to cell you with Inmate Burris caused you to not take your medications, placed you in a potentially dangerous situation with the cell mates you were placed with, and that she breached a cell agreement made between you and Inmate Burris. You ask for monetary compensation of one million dollars, $1500 per day and to cell with Inmate Burris so that your family will know you are safe and secure.

On May 10, 2018, you spoke with Ms. Clark about your concerns regarding living with Inmate Hutchings and of your request to cell with Inmate Burris. Ms. Clark tried to resolve your issue and instructed you check with the Officers to see what cells have open beds and she would move you to that cell if appropriate. She denied your request to cell with Inmate Burris due to an imbalance of power concern. Lt. Vance became involved when he received a telephone call from your upset mother about your current living situation. Lt. Vance contacted Ms. Clark and she updated him on the situation and your available options. Lt. Vance was also informed she denied your request to cell with Inmate Burris due to an imbalance of power concern. You did not provide Ms. Clark with a cell you wanted to move into that day or any day after. On June 8, 2018, Ms. Clark discovered that you and Inmate Burris were celled together. Both you and Inmate Burris were called into her office with CC Makosy present, and informed that this move was made without her knowledge and that no cell agreement was found. She did move you to another cell that day. On June 9, 2018, you came to see her in her office to show her the Father's Day cards you were going to send out to several individuals including the one for Inmate Burris. Ms. Wasson contacted Ms. Clark with a suggestion about a possible move with another inmate on the housing unit. On June 18, Ms. Clark moved you to another cell due to your complaints of being celled up with a Sex Offender and you were moved to a different cell. Since then, there have been no complaints from you about cellies. Ms. Clark denies being unprofessional when speaking with you.

Per the 2017 DOC Inmate Handbook, "It is your responsibility to inform staff of any preferences you have about your cell assignment. A preference filed by you will be assessed by staff, but not necessarily granted." No cell agreement was found with her approving you to reside together. Therefore, there was no breach of a cell agreement. Cell agreements are not part of policy. There is ongoing staff training for celling inmates. Unfortunately, you are not happy with her decision to not cell you and Inmate Burris together. I would also encourage you to take your medication no matter how upset you are with situations that are out of your control. Ms. Clark denies making the statements in your report and of being unprofessional. A/CC Makosy's interview confirms Ms. Clark's version of events on June 8, 2018. I find no violation of policy and code of ethics.

As for your relief sought, your request to cell with Inmate Burris is denied due to an imbalance of power and the financial compensation you requested is denied. You may assure your family that you are safe and secure.

| Signature: | H. Haldeman | | |
|---|---|---|---|
| Title: | Major of Unit Management | | |
| Date: | July 11, 2018 | | |

CC:    Facility Grievance Coordinator  DC-15   File

**DC-ADM 804, Inmate Grievance System Procedures Manual
Section 1 – Grievances & Initial Review**
Issued: 1/26/2016
Effective: 2/16/2016

*Attachment 1-D*

State Correctional Institution

RECEIVED

**SCI**
**INMATE APPEAL TO FACILITY MANAGER**
**GRIEVANCE**

EXHIBIT 17

JUL 31 2018

at Rockview

| Inmate Number NA18 Superintendent Shawn Strawn JC | NAME | HOUSING UNIT BA 1-48 | DATE July 26th, 2018 | GRIEVANCE# 742890 |
|---|---|---|---|---|

I received my initial response from the Grievance Office/Coordinator on July 16th, 2018
and have the following appeal issues.

Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions.

Please provide a BRIEF (no longer than two pages) appeal statement.

I, Shawn Strawn Jr, am hereby appealing the Initial Review Response to grievance number: 742890. The Major of Unit Management, Ms. Heather Haldeman, was assigned Grievance officer. A response by her is a conflict of interest considering she was in fact a staff member I had contacted prior to filing grievance # 742890. Respondent Superior, which is latin for "let the superior reply", is a legal term that would leave Ms. Haldeman responsible for Ms. Clark's adverse actions. Not only does this further show conflict of interest but also that there is a collusion within the establishment of SCI-Rockview. I also appeal Ms. Haldeman's allegation that the Initial Grievance is "frivolous". The legal definition of Frivolous is as follows: "clearly insufficient as a matter of law; obviously lacking in substance." In 1974 the Supreme Court made clear that prisoners do not forfeit all constitutional protection by reasons of their conviction and confinement; please see Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Pell v. Procunier, 417 U.S. 817, 822 (1974) states (retains these rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correction system") Cruel and Unusual Punishment is in fact a protected liberty of the Eighth Amendment [U.S.C.S Const. I.8.9]. The cruel + unusual Punishment inflicted by Ms. Clark was in fact Failure to Protect. The court held that prison officials have a duty to protect prisoners from violence at the hands of other inmates in Farmer v. Brennan, 511 U.S. 825, 833 (1995). Farmer also states that inmates "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate, it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. Id. at 842. Ms. Clark's deliberate indifference will be held liable under the Eighth Amendment. She acknowledged that I am a younger and weaker inmate that ←
is high risk for victimization and also has been informed several times by her peers and myself that being celled with Inmate Young is a substantial ←
risk. She also failed to take reasonable measures to abate this risk. Ms. Clark kept Inmate Young and I celled together from June 8th ←
2018 to June 18th 2018. During this ten days I did not take my psych medication, that indeed helps me cope with anxiety and depression, for fear that I may be taken advantage of in my sleep. In turn I stayed up most of each night which affected my every-day lifestyle and mental health state. I have never claimed, as Ms. Haldeman stated, that Ms. Clark's refusal to cell me with Inmate Burris caused me to not take my medications. As stated before, the substantial risk I faced while celled with Inmate Young is what had - (Cont.)

INMATE SIGNATURE: _Shawn L. Strawn Jr_

EXHIBIT 18

Grievance #: 742890 Appeal Cont.

caused me not to take my medications.

Ms. Haldeman acknowledged that Ms. Clark denied my results to cell with Inmate Burris due to an "imbalance of power concern" but yet Inmate Young is also considered such for a man of my size; especially when I'm designated to sleep on the bottom bunk where it would be hard to stop a man of size from taking advantage of me. Inmate Young is 5'9" in height and approximately 230-250 lbs in weight as i am 5'3" in height and 105 lbs in weight. This further shows deliberate indifference and a substantial risk.

Ms. Haldeman also acknowledged that Ms. Wasson indeed contacted Ms. Clark about moving me away from Inmate Young but did not include the date, which was June 13th, 2018. After this statement Ms. Haldeman confirmed that I was finally moved on June 18th, 2018...five days after being once again informed of the substantial risk I faced. Though she stated that this move was not because of the substantial risk I faced but because of alleged complaints of being celled up with a sex offender. I have never made such complaints; especially considering Inmate Burris is convicted of such charge. Though I did have concerns about being celled with someone convicted of "pedophile charges" or any other predatory crimes towards children considering my stature and attributes.

Ms. Haldeman quoted from the 2017 DOC Inmate Handbook that "It is your responsibility to inform staff of any preferences you have about your cell assignment. A preference filed by you will be assessed by staff, but not necessarily granted." She then stated "No cell agreement was found with her (Sharon Clark) approving you to reside together (Inmate Burris and I). There is in fact a cell agreement preference filed...that had to be approved, whether by Ms. Clark or another prison official, for us to be celled together for approximately two and a half weeks. If such paper work exists it was in fact a breach of a cell agreement contract and if not there must be an explanation as to how I was moved from 123 cell to 133 cell with Inmate Burris.

Ms. Haldeman felt as if she found no violation of policy and code of ethics; in belief that the Unit Management Team's disowning of the claims I have made are "true." Though direct violation of the "DOC Code of Ethics" under Section B, subsection I (as quoted in initial grievance) can be proven without them acknowledging all related incidents. Putting my life at jeopardy is not "positive" or involve an "intelligent, honest and impartial treatment of inmates." The DC-ADM 801 Glossary of terms defines Unit Management Team as follows: "The individuals assigned to operate a housing unit with the responsibility for security, risk management, and program delivery." Ms. Clark not promoting security and risk management is a violation of policy.

Ms. Haldeman inquired that I am not happy with Ms. Clark's decision to not cell Inmate Burris and I together but it is actually the substantial risk of harm she put me in...which is against the Eighth Amendment and caused me pain and suffering. She also inquired that I am not taking my medication and continue to not take them so that I may be alert while celled with those who are a imbalance of power concern and that i do not feel safe and secure with.

In conclusion, I lastly appeal the relief I seek being denied and even granted. Firstly, the request to cell with Inmate Burris being denied due to an imbalance of power should be upheld because the multiple contradictory moves Ms. Clark has made since June 8th, 2018 shows that such a reason is void. Secondly, the request for monetary compensation should be upheld do to Ms. Clark being subject to scrutiny under the Eighth Amendment. Lastly, my final request which was granted may not be carried out due to me not being safe and secure.

I ask that Ms. Heather Haldeman's response be denied and grievance # 742890 be upheld. I thank you for taking your time and consideration into this matter.

Truthfully Submitted,
Shawn Strawn, Jr.
On this date 7 / 27 / 2018

cc: file

EXHIBIT 19

## Facility Manager's Appeal Response
## SCI Rockview
Box A, Bellefonte, PA 16823

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

| Inmate Name: | Shawn Strawn | Inmate Number: | NA1871 |
| Facility: | SCI-Rockview | Unit Location: | B-A-1048-01 |
| Grievance #: | 742890 | | |
| Publication (if applicable): | | | |

| Decision: | ☒ Uphold Response (UR)  ☐ Uphold in part/Deny in part |
| | ☐ Uphold Inmate (UI) |
| | ☐ Dismiss/Dismiss Untimely |

*It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.*

**Response:** *Frivolous*

I have reviewed the initial grievance, the grievance officer response, and the subsequent appeal of your issues relating to your problems with Unit Manger Clark as it relates to your housing status.

This matter has been addressed with you in multiple interactions with your Unit Team. Ms. Clark is doing her job and is monitoring all cell assignments. Policy is in place regarding double celling and it is the unit team responsibility to follow it. You are not entitled to any specific cell assignment, nor are you entitled to any specific cell partner. DC ADM 802 allows you to seek protective custody status if you feel your safety is in jeopardy. Major Haldeman supervises all of the unit teams and is the perfect person to answer complaints about one of her Unit Managers.

Your appeal of this matter is denied.

| Signature: | *[signature]* |
| Title: | Facility Manager |
| Date: | 08/17/2018 |

cc: DC-15
    File

## INMATE APPEAL TO FINAL REVIEW
## GRIEVANCE

EXHIBIT 20

| INMATE NUMBER | NAME | FACILITY | DATE | GRIEVANCE# |
|---|---|---|---|---|
| NA1871 | Shawn Strawn | SCI-Rockview | 9/11/18 | 742890 |

I received my appeal from the Superintendent on _August 22nd, 2018_ and have the following appeal issues.

Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions.
Appeals must relate to the issue presented in the initial grievance and 1st level appeal.

Please provide a BRIEF (no longer than two pages) appeal statement.

I, Shawn Strawn Jr, am hereby appealing the Facility Manager's Appeal Response to grievance # 742890. Mr. Mark Garman's allegation that the Initial Response Appeal is "frivolous" is void because throughout his response he did not dispute my claims of Eighth Amendment violations, policy violations, code of Ethics violations, and a breach of contract. I also clearly asserted the definition of "frivolous" in that same subsequent appeal along with case laws and a quotation of the D.O.C code of Ethics to support that my claims have substance. It is unsettling that the basis of the Initial Grievance has not been addressed, which in its own right causes Mr. Garman's decision to uphold Ms. Heather Haldeman's Initial Review Response to be frivolous. Not only has Mr. Garman bypassed the above matters and not responded properly but there was no rationale behind his judgement. In his Appeal Response he stated that this matter has been addressed with me in multiple interactions with my unit team, but there has been no action taken to resolve these issues by them, Ms. Haldeman, and even Mr. Garman himself. He also inquired that Ms. Clark is doing her job and is monitoring all cell assignments along with stating that it is the unit team's responsibility to follow policy regarding double celling. Ms. Clark's deliberate indifference to my cell assignment with Inmate Young and her violation of policy regarding safety, security, and risk management in double celling shows that she is in fact not doing her job as a Unit Manager. Ms. Clark herself has expressed and acknowledged that I am a potential victim and must not be celled with anyone that is a imbalance of power concern. Also considering my mental health, DC-ADM-006 section III subsection A states that "every inmate, including an inmate with a qualified disability, is housed in a manner that provides his/her safety and security." That policy in of itself negates Mr. Garman's reference to DC-ADM-802 regarding protective custody. I should have never been housed in such a manner to begin with. (cont.)

INMATE SIGNATURE: Shawn L Strawn Jr

DC-ADM 804, Inmate Grievance System Procedures Manual
Section 2 – Appeals
Issued 1/26/2016
Effective 2/16/2016

Attachment 2-E

EXHIBIT 21

INMATE APPEAL TO FINAL REVIEW CONTINUED
GRIEVANCE #742890

Action was possible to diminish risk by prison officials without going to such extreme measures. Protective custody should be used for what is out of their control, not to cover for their adverse actions. A housing issue is much different and easier to avoid than one in population for prison officials. Protective Custody may in fact make life in prison much more dangerous when returned to general population. To advise such measures without even trying to abate or even look into any risks, knowing it may jeopardize my health and/or mental well-being, is in fact deliberate indifference. Mr. Garman lastly acknowledged that Ms. Haldeman does supervise all unit teams further proving conflict of interest.

It is a fact that the Department of Corrections' mission is to maintain a safe and secure environment for all inmates and to provide opportunities for inmates to acquire the skills and values necessary to become productive law abiding citizens. The CDCC Mission Statement is as follows; "The mission of the State Correctional Institution of Camp Hill is to classify and transfer all male offenders, legally committed to the PA Department of Corrections, to institutions where their treatment and security needs are best met. We advance public and institutional safety by identifying the treament needs and security risks posed by those individuals committed to our care. We accomplish our mission through the administration and interpretation of impartial assessments, analysis of legal records, the clinical judgement of our staff, and the development of plans to prepare individuals for a successful re-entry in the community." It seems as though SCI-Rockview has not met security needs. George Clements, the Director of CDCC, stated "Our mission is to protect the public by confirming persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while protecting the rights of crime victims." Safety and security have not been practiced nor has my Eighth Amendment Rights of the U.S. Constitution been protected by SCI-Rockview prison officials.

I ask that Mr. Mark Garman's response be denied and grievance #742890 be upheld. I thank you for taking your time and consideration into this matter.

Truthfully Submitted,

Shawn L. Strawn Jr.

CC;File

EXHIBIT 22

2018

**Final Appeal Decision**

**Secretary's Office of Inmate Grievances & Appeals**
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

This serves to acknowledge receipt of your appeal to the Secretary's Office of Inmate Grievances and Appeals for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to the Facility Manager, the Facility Manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this office.  As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Special Investigations and Intelligence, etc) may have been solicited in making a determination in response to your issue as well.

| Inmate Name: | Shawn Strawn | | Inmate Number: | NA1871 |
|---|---|---|---|---|
| SCI Filed at: | Rockview | | Current SCI: | Rockview |
| Grievance #: | 742890 | | | |
| *Publication (if applicable)*: | | | | |

| Decision: | ☑ Uphold Response (UR) |
|---|---|
| | ☐ Uphold Inmate (UI) |
| | ☐ Uphold in part/Deny in part |

*It is the decision of the Secretary's Office of Inmate Grievances and Appeals to uphold the initial response, uphold the inmate, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.*

| Response: | | | *Frivolous* | |
|---|---|---|---|---|

You claim that Ms. Clark has not treated you with fairness, equality, and respect during your time at SCI Rockview.  You allege that she has been discriminatory and targeted you through her bias opinions and decisions, and does not have your best interest in mind.  You say that she has housed you with three inmates who are convicted pedophiles, which you are not.  You say that you had a signed housing agreement with Inmate Burris, and were compatible cellmates; however, she terminated the housing arrangement.  You request to finish the cell agreement with Inmate Burris for the duration of your time.  You request to be able to let your family know that you are safe and secure.  You seek compensation in the amount of $1,500.00 for every day you have to "sleep with one eye open", and $1,000,000.00 from Ms. Clark and the DOC.

A review of the record found that there is no evidence that Ms. Clark did not treat you with fairness, equality, or respect.  There is no evidence that Ms. Clark was discriminatory, targeted you, or does not have your best interest in mind.  Cell agreements, although encouraged, are not and can not always be honored.  The investigation found no cell agreement between you and Inmate Burris.  Housing assignments are made with the safety and security of inmates, staff, and facility needs.  Your grievance and requested relief are denied.

| Signature: | Dorina Varner | *Teri Moore for* |
|---|---|---|
| Title: | Chief Grievance Officer | |
| Date: | 9/21/2018 | |

DLV/HIS
cc:    DC-15/Superintendent Garman
        Grievance Office

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 2 – Appeals**
Issued: 1/26/2016
Effective: 2/16/2016

*Attachment 2-F*

EXHIBIT 23

| | Commonwealth of Pennsylvania<br>Department of Corrections |
|---|---|
| **Form DC-135A**<br><br>**INMATE'S REQUEST TO STAFF MEMBER**<br><br>*Sean L McClanc* | **INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in<br>preparing your request, it can be responded to more<br>promptly and intelligently. |
| 1: To: (Name and Title of Officer) | 2. Date:<br><br>6-10-2018 |
| 3. By: (Print Inmate Name and Number)<br><br>Shawn Strawn Jr. NA1871<br><br>*Shawn L Strawn Jr*<br>Inmate signature | 4. Counselor's Name<br><br>Mr. Makosy<br><br>5.Unit Managers Name<br><br>**MRS. CLARK** |
| 6. Work Assignment<br><br>Block worker | 7. Housing Assignment<br><br>**BA bldg. 1-10** |

8.  Subject:  State your request completely but briefly. Give details.

I humbly ask for your help in a recent occurence. Mr. Perry Burris HU 9132
and I had a cell agreement in 1-33 cell on BA Block. We got along well and also
had good conduct for almost three weeks. On Friday June 8th we were seperated
for what seems to be no reason. This move has caused me to relapse in anxiety & Depression.
I also feel uncomfortable with my new cellmate. I respectfully request your help in
resolving this unjusted matter! I thank you for taking the time to read this and I
patiently await your response.

Truthfully,
Shawn Strawn Jr
Shawn L Strawn Jr

CC: File

9.  Response: (This Section for Staff Response Only)

UM Clark will have to answer
this and she is the one
to speak to

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name ___Haldama___ ___COS___ Date 6/528
              Print                    Sign

EXHIBIT 24

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

1. To: (Name and Title of Officer)
~~Ms. Watson (Psychology Dept.)~~

2. Date: 7/8/18

3. By: (Print Inmate Name and Number)
Shawn Strawn NA1871

Shawn L Strawn JL
Inmate Signature

4. Counselor's Name
Mr. Makosy

5. Unit Manager's Name
Ms. Clark

6. Work Assignment
Block worker

7. Housing Assignment
BA 1-50

8. Subject: State your request completely but briefly. Give details.

Thank you in advance for taking the time to read and respond to this request slip, it is greatly appreciated. I, Shawn Strawn JL, am hereby requesting that you confirm (via this request slip) the following facts:

1) On June 10th, 2018 I sent you a request slip stating my mental health state and concerns about my living arrangement.

2) On June 13th, 2018 You put me on the call-out to meet with you at 9:15am that day. During this meeting you stated that being celled up with an inmate by the name of Mr. Young could and may very well be a substantial risk to myself. ~~You also stated that considering my status I should be a Trimmers Z-code for my safety. Lastly, You stated that you would inform Ms. Shawn Clark of these cuts during 12:00pm count to get me off us more.~~

3) On June 13th, 2018 when count cleared you pulled me to the side and said even after you spoke with Ms. Shawn Clark she refused to move either one of us.

4) On June 21st, 2018 I asked for the June 10th, 2018 request slip back and you stated that "it may have been misplaced".
CC: File

9. Response: (This Section for Staff Response Only)

Shawn-
I don't agree with all of this and I do believe you are putting words in my mouth. I would like to help you do best as I can, but within limits of what I am able to do. I also don't appreciate you saying that I've made statements that I did not. ~~I thought that I've been moved to a cell you were happy with? I can schedule you next week to talk.~~

To DC-14 CAR only ☐          To DC-14 CAR and DC-15 IRS ☐

Staff Member Name  A. Watson,
Print                     Sign

Date 7/16/18

Revised July 2000

EXHIBIT 25

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1. To: (Name and Title of Officer)<br>Ms. Heather Haldeman (Major) | 2. Date: 7/12/18 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>Shawn Strawn  NA1871<br><br>_Shawn L Strawn JR_<br>Inmate Signature | 4. Counselor's Name<br>Mr. Makosy |
| | 5. Unit Manager's Name<br>Ms. Clark |
| 6. Work Assignment<br>Block Worker | 7. Housing Assignment<br>GA1-50 |

8. Subject:  State your request completely but briefly.  Give details.

I would like to thank you in advance for taking the time to read this.

I ask that you please respond (via this request slip) on how this issue may be resolved.

Please see "Attachment" for further information regarding this issue and my request.

Shawn L Strawn JR.

Shawn L Strawn JR.

CC: File

9. Response: (This Section for Staff Response Only)

Request for refund is denied

→ Concerns noted ←

As you allege "sexual harassment"
→ this was copied to Lt Sherman ←

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name  _Haldeman_  _COS_  Date 7-17-18
         Print              Sign

Revised July 2000

EXHIBIT 26

### ATTACHMENT

I, Shawn Strawn, Jr., am considered a "vulnerability issue" for being a "younger and weaker inmate" through the eyes of the Department of Corrections and because of this I am also considered high risk for extortion, rape and coercion. These issues that the Department is suppose to protect me from while under their supervision are the same issues in which I have been subject to by prison officials here at SCI-Rockview.

Not only that but I also have been retaliated against for a grievance I submitted on June 15th, 2018, signed by the Corrections Superintendent Assistant Facility Management Vicki J. Paul on June 20th, 2018. The grievance number is :742840. This grievance contained a claim against "Ms. Sharon Clark, the Unit Manager on 3/A S.U (Special Needs Unit) block for "Failure-to-Protect" and inflicting "cruel and unusual punishment" which are against my Eighth Amendment rights to the United States Constitution. It also contained a "Retaliation Clause" which prison officials breached. Retaliation is against my United States Constitutional rights to Access to the Courts, the First Amendment, and in this case a Eighth Amendment tort.

Ms. Sharon Clark has not only exposed me to a substantial risk of being raped through deliberate indifference but also has sexually harassed me on three different occasions, two of which have been reported to PREA (Prison Rape Elimination Act).

On July 9th, 2018 I was being staffed for parole by 3/A S.U's Unit Management Team, Mr. Makosy and Ms. Sharon Clark. Before starting the staffing interview I was given an "Informal Resolution Action" by Ms. Sharon Clark for something I didn't do. The Unit Management Team then coerced me into signing it by saying if I didn't it my parole will be stripped from me. It is my belief that there is a consoiracy within SCI-Rockview amongst the prison officials. Out of fear, I did not want to risk being subject to a loss of parole even though I know such acts never occurred. Not only was I coerced by threats to sign the paper but I was also extorted for $2.32. After this meeting Ms. Sharon Clark stated "I know about the grievance."

The DC-141 Part 1 is : D194535. Attachment 2-A was dated July 1st, 2018. The action taken was "restitution for Damaged/Destroyed State Items/Property" and the items it claimed was "2 excess meals." The amount to be pain was "($1.16 X 2) $2.32 total" in which I hesitantly signed on July 9th, 2018 along with a DC-138A cash Slip. Ms. Sharon Clark also signed on this same date.

Attachment 1-B stated that the incident was at "Culinary." The Misconduct charges included; "Class 1 #35-"refusing to Obey an Ocner", # 45-"Presence In an Unauthorized Area", # 45-"Theft of Services." The reporting staff member was Mr./Ms. Phillips and his/her version was as follows; "On 07/01/18 a review of the Meal Management Report indicates that, HA-1871, Strawn received more than one breakfast meal on 06/24/18 and more than one lunch meal on 05/30/18 per DC AD4-510 E.M.S, Guidelines, HA-1871 Strawn in violation as outlined in Section G5.", "Misconduct delayed due to Meal Management Report being printed weekly."

I would like to say that I have never, in all of my time being incarcerated by the Department of Corrections, "doubled up on a

meal." The breakfast meal served on 6/24/18 was fried eggs in which I
give away every Sunday morning that I attend "chow." The lunch meal
served on 6/30/18 was Frankfurters", also know as hotdogs, in which I
can hardly eat two nevertheless four. Mr./Ms. Phillips stated that the
alleged incident date was 06/24/18 but yet included another alleged
incident that supposedly occurred six days later, which was one day
before the report. Not only that but it is obvious that this prison
official did not take appropriate measures to confirm these
allegations; including but not limited to camera footage.
   Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001)-the Third Circuit
held that "the question is not whether Rauser had a protected liberty
interest in the privileges he was denied, but whether he was denied
these privileges in retaliation for exercising constitutional
rights." Id., at 335.
Allah v. Sieverling, 229 F.3d 220, 224-225 (3d Cir. 2000) (Governing
actions which standing alone do not violate the constitution, may
nonetheless be constitutional/torts if motivated in substantial part
by a desire to punish an individual for exercise of a constitutional
right.").
   Rauser, sets forth the essential elements of a retaliatory claim;
1). As a threshold matter, a prisoner must prove that the conduct
which led to the alleged retaliation was constitutionally protected;
as stated in the second paragraph;
2). Secondly, a prisoner must show that he suffered some "adverse
action" at the hands of prison officials; as stated in the fourth
paragraph;
3). Thirdly, the prisoner must establish a causal connection between
the first two elements by proving that his constitutionally protected
conduct was a 'substantial or motivating factor" in the adverse
action (here as also stated in the fourth paragraph as proven)
paragraphs;
4). Finally, if the person proves that his constitutionally protected
conduct was a substantial or motivating factor in the adverse action
even in the absence of the protected activity. Rauser, 241 F.3d at
335.
Farrell v. Planters Lifesavers Co., the Third Circuit identified
several factors relevant to retaliatory inquiry. 206 F.3d 271 (3d
Cir. 2000).
1st-evidence of "temporal proximity" between the exercise of the
protected speech and the adverse action suggests retaliatory
motivation. Id. at 280; my constitutionally protected grievance was
submitted on 6/15/2018 and signed on 6/20/18 by the Corrections
Superintendent Assistant/Facility Manager, Ms. Nicki J. Paul 6/24/18
and 6/30/18 are the dates which Mr./Ms. Phillips accused me of
engaging in misconduct activity.
2nd-evidence of "intervening antagonism" between exercise of the
protected speech and the adverse action suggests retaliatory
motivation. Id; Ms. Clark stated "I know about the grievance" after
giving me the informal.
3rd-evidence of "inconsistent reasons" for the adverse action would
likewise point toward a finding of retaliatory motivation. Id at
281; Not only have I not received a misconduct prior to this one but
no video camera evidence has been shown.
   I request that footage be shown of these alleged incidents and

that Mr./Ms. Phillips reimburses the $ 2.32 plus interest to my inmate account if there is no such evidence.

Truthfully Submitted,

Shawn L Stean SR

(Signature of Shawn Stean)

cc: File

146

EXHIBIT 27

Received
7/23/18

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8.  If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1.  To: (Name and Title of Officer)<br>Ms. Clark (BA Unit Manager) | 2.  Date:<br>7/15/18 |
|---|---|
| 3.  By: (Print Inmate Name and Number)<br>Shawn Strawn NA1871<br>Shawn C. Strawn Sr<br>Inmate Signature | 4.  Counselor's Name<br>Mr. Makosy |
| | 5.  Unit Manager's Name<br>Ms. Clark |
| 6.  Work Assignment<br>BA block worker | 7.  Housing Assignment<br>BA-1-50 |

8.  Subject:  State your request completely but briefly.  Give details.

I would like to thank you, in advance, for taking the time to read this. I am requesting a temporary Z-code (single cell) since it has come to my attention, by several prison officials, that I am a potential victim. You even acknowledged this and even stated that I am, in your own words, "Weak, fragile, and tiny." Lt. Vance has agreed with your statement. Ms. Wasson acknowledged that everyone is bigger than me along with Lt. Sherman. Ms. Wasson also recommended a temporary Z-code. These conversations have caused my anxiety to spike to the point where I wasn't even take my psych medication for fear that I may be taken advantage of in my sleep. In turn of not taking medication that helps with my mental health state I have found myself becoming more irritable which over a period of time may cause me to react... It feels like all of the rehabilitation I have gone through to become a productive member of society is now slowly deteriorating. I ask for a temporary Z-code so that I may be safe, secure and comfortable enough to take medication that helps without the fear of becoming a victim. It is your responsibility as unit manager to promote security, risk management and program delivery. Any help will be greatly appreciated. I ask that you respond (via this request slip) because I do not feel safe meeting with you without another prison official present. Please state all that may be done and have a pleasant day.

CC:File

9.  Response: (This Section for Staff Response Only)

Process to be initiated

by your counselor

Forward request to Mr. Makosy

| To DC-14 CAR only |  ☐ To DC-14 CAR and DC-15 IRS |
|---|---|

to Psy

Staff Member Name _____ Ms Lee      Date 7/27/2018
                      Print          Sign

Revised July 2000

EXHIBIT 28

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1: To: (Name and Title of Officer)<br>Ms. Wasson (psych counselor) | 2. Date:<br>7/15/18 |
|---|---|

| 3. By: (Print Inmate Name and Number)<br>Shawn Strawn NA1871<br><br>Shawn L Strawn JR<br>Inmate signature | 4. Counselor's Name<br>Mr. Malosy |
|---|---|
| | 5. Unit Manager's Name<br>Ms. Sharon Clark |

| 6. Work Assignment  BA block worker | 7. Housing Assignment<br>BA 1-50 |
|---|---|

8. Subject: State your request completely but briefly. Give details.

I would like to thank you, in advance, for taking the time to read this. I kindly ask that instead of scheduling me to see you if you would instead tell me (via this request slip) what, within your limits, you're able to do to help me as best as you can. It would be greatly appreciated. Unfortunately, I do not appreciate you saying that I have made statements that I did not. Since June 8th, 2018 I have not been moved to a cell that I am/was "happy with" nor that I was comfortable with. I can't even take my prescribed psych medications, which indeed help for fear that I may be taken advantage of. In turn of not taking those meds my anxiety and depression seem to be at an all time high. I have become irritable and fear of reoffending. This saddens me because I have tried to become a better person so that in-time I may be a productive member of society. I was wondering if if you may give me a temporary Z-code (single cell) so that I may rehabilitate and not be as serious risk to harm down these bigger, stronger, and more powerful than I am. Thank you once again and have a pleasant day.

cc: File

| 9. Response: (This Section for Staff Response Only) |
|---|

Psychology is able to help you with your mental health needs. Psych does not issue Z-codes, that is unit management. Since you mentioned anxiety + depression, I have asked another psych, Ms. Hewitt, to meet with you. I am unable to see inmates until after August 6.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name  A. Wasson P88
Print                          Sign

Date  7/17/18

Revised July 2000

EXHIBIT 29

Shawn Strawn, Jr.
SCI-Rockview, Inmate Number, NA-1871
1 Rockview Place, Box A
Bellefonte, Pa. 16823-0820

July 18th, 2018

PREA Coordinator
1800 Elmerton Avenue
Harrisburg, Pa. 17110

Dear PREA Coordinator,
    I have reported two instances of me being sexually harassed by
the B/A Special Needs Unit (SNU) Unit Manager Ms. Clark, to the PREA
Coordinator on June 20th, 2018. Since this time I have been sexually
harassed by her once again and even retaliated against.
    On June 27th, 2018, Ms. Clark demanded me to take down a sheet
that was drying on the designated laundry line. Although it was not
count-time, and the sheet was not blocking the door she stated that
it was because she could not see me. As I was sleeping the top half
of my body was visible but yet she insisted to see my lower half as
well. I would like to state that it is summer and extremely hot so I
sleep in my undergarments. It is my belief that since she has gotten
away with sexually harassing me on several occasions her next move is
to sexually assault me. Whenever she sees me she "sizes me up" and
she also constantly reminds me that I am "weak, fragile, and tiny"
and can be taken advantage of.
    On July 9th, 2018, I was being staffed for parole by B/A Special
Needs Unit (SNU) Team, Mr. Makroy and Ms. Clark. Before starting the
staffing interview I was given an "Informal Resolution Action" by Ms.
Clark for something I didn't do. The Unit Management Team then
coerced me into signing it by saying if I fight it my parole will be
stripped from me. It is my belief that there is a conspiracy within
SCI-Rockview amongst the prison officials. Out of fear, I did not
want to risk being subject to a loss of parole even though I know
such acts never occurred. Not only was i coerced by threats to sign
the paper but I was also extorted for $2.32. After this meeting Ms.
Clark stated "I know about the grievance." This was an act of
retaliation against a grievance I submitted but also of my former
PREA report. A meeting with Lt. Sherman two days later confirms this.
    On July 11th, 2018, Lt. Sherman called me down to his office to
speak with me about my previous PREA report. He tried to get me to
sign a statement to stop the PREA investigation and tried to convince
me that the sexual harassment; (repeated verbal comments or gestures
of a sexual nature to an inmate by staff member, contractor or
volunteer, including demeaning references to gender, sexually
suggestive or derogatory comments about body or clothing, or obscene
language or gestures), has never occurred. He even stated that I am
in state prison not a Holiday Inn after I explained to him that I
want safety, security and rehabilitation.
    Lt. Sherman not taking my claims seriously is not only staff
neglect but also a violation of responsibilities.
    It took a lot of courage for me, as a male, to report incidents
of a sexual nature against a female. All too often the men brave

enough to speak out about such issues are looked down upon. It is embarrassing and seems as though there is no one to turn to for help. I fear further retaliation and sexual activity from Ms. Clark. I also feel threatened by her presence, especially considering the amount of power she holds. I pray that someone will be here for me during this time of anguish. Someone who will give me the mental strength needed and to protect me from experiencing any of this again. If whoever reading this can/may help or knows someone who can it will be greatly appreciated.

<u>Truthfully Submitted,</u>

*Shawn L. Shawn Jr.*
(Signature Shawn L. Strawn, Jr.)

cc: file

EXHIBIT 30

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1: To: (Name and Title of Officer)<br>Ms. Collins (Psych) | 2. Date:<br>8/5/18 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>Shawn Strawn NA1871<br>_Shawn L. Strawn Jr._<br>Inmate signature | 4. Counselor's Name<br>Mr. Makosy |
| | 5. Unit Manager's Name<br>MRS. S CLARK |
| 6. Work Assignment<br>Block worker | 7. Housing Assignment<br>BA |

8. Subject: State your request completely but briefly. Give details.

I request that you please inform Dr. Burke (the lady you visited me with in PoC) to take me off the medications she represcribed me. I expressed to her that I did not want my medications because I will refuse to take them if housed with someone that is a power imbalance to myself. This refusal, though to keep me alert to substantial risks, can jeopardize parol. I see parol next month so I ask to be taken off of the meds I never agreed to retaking or given a temporary Z-code so that I may safely administer them. Thank you for your time and consideration in this matter.

CC: File

9. Response: (This Section for Staff Response Only)

Mr. Strawn,

I am not sure if psychiatry will need to meet with you in order to discuss your request to discontinue the medication. I am forwarding this request to Psychiatry/ Psychiatric Scheduler.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name ___T. Collins___ / ___T Collins PS___ Date ___8/7/18___
Print                          Sign

EXHIBIT 31

Mr. Shawn Strawn Jr.
1 ROCKVIEW PLACE
NA1871
Box A
Bellefonte, PA 16823

June 20, 2018



    The following policy is applicable to all facilities operated under the
jurisdiction of, or conducting business with the Department of Corrections,
Department Employees, Volunteers, Contract personnel, Official visitors, and
inmates;

    "It is the policy of the Department to prohibit any form of sexual abuse
and/or sexual harassment of an inmate. The Department has zero tolerance for
sexual abuse or sexual harassment of any individual under the supervision of
the Department. (28 C.F.R. §115.11[a]) Anyone who engages in, fails to report,
or knowingly condones sexual abuse or sexual harassment of an inmate shall be
subject to disciplinary action and may be subject to criminal prosecution."

    I, Shawn Strawn Jr., am 22 years of age but appear much, much younger. I
am 5'3" in height and 106 lbs. in weight. I also have barely any facial hair.
The reason why I comment on my physical attributes is so that you have a
better understanding of the danger Ms. Clark, the BA SNU (Special Needs Unit)
Unit Manager, put me in not just once, or even twice, but multiple times.
These instances can be found within "ATTACHMENT", a copy of a grievance I
submitted on June 15th, 2018 about the events that took place from June 8th,
2018.

    Unfortunately, because you only have 15 days from a particular event to
file a grievance I did not include another instance between Ms. Clark and I.
Up until recently I didn't even have the courage to tell anyone.

    On  5 / 10 / 2018 , I asked the Unit Manager to admit me to the TBO
(Treatment Building Observation) because I felt as if I would harm myself or
someone else. She told me that I did not qualify and commanded me back to my
cell. When I got back I tried to hang myself but the knot slipped. Ms. Clark
did not take my mental health illness seriously which could have cost me my
life.

    Also on this date, I felt as though my character was defamed when Ms.
Clark belittled and sexually harassed me by insenuating sexual acts with
another inmate. After I asked if I may move with Mr. Burris, a man of whom I
highly respect and look up to as a father-figure, she replied with "That's
highly inappropriate!"

    Now I ask, how is two heterosexual males living together inappropriate?
Especially when they have a FATHER/SON bond in a place that breeds selfishness
and "it's me against the world" mentalities. Also, Ms. Clark re-confirmed my
feelings of sexual harassment from her on Friday June 8th, 2018. After calling
Mr. Burris a "Big Brute!" for a second time, she yelled: "I know the truth, we
know why he's really in there!" Referring to homosexual activity. It makes me

wonder what type of life she lives or even how warped her mind must be to imply such conduct.

Between Ms. Clark and her informal accusations, along with her constantly moving me from one cell to the next, it has taken a toll on my mental health state. I have relapsed in anxiety and depression, and have not been taking my prescribed psych medications, which does indeed help, for fear that I may be taken advantage of in my sleep.

Ms. Clark has made me become extremely paranoid by making even someone I respect, look up to, and love like a father seem out to get me. She has also stated that there was a "power differential" between Mr. Burris and I considering our statures. Ms. Clark then contradicted this claim by moving me in with an inmate name Mr. Young whom was twice my weight and much taller than me. She also designated me to sleep on the bottom bunk where it would be easier for a man of his size to take advantage of a man my size. This further bothered my family and I considering Mr. Young's charges.

It makes no sense nor does it seem competent to move two inmates with a cell agreement, meaning that they in fact were comfortable with living with one another for at least 6 months, instead of with inmates that posed a risk for all parties involved. A cell agreement is a contract regardless of age, race, religion, or even as Ms. Clark suggested; height and weight.

I ask for your help in these sensitive matters I have and I thank you for taking the time to read this. I also would like you to know that I appreciate all that you may and can do, in advance. Please see "Attachment" for further information regarding the events of June 8th, 2018 and the "D.O.C. Code of Ethics".

Truthfully Submitted,

Shawn Strawn Jr.

EXHIBIT 32

State Correctional Institution
**RECEIVED**

DC-804 AUG 0 9 2018
Part 1      at Rockview
Supt's Assitant's Office

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
751398
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Ms. Nicki Paul | SCI-Rockview | 8/8/18 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE OF INMATE: |
|---|---|
| Shawn Strawn   NA1871 | Shawn L. Strawn, Jr |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| BA Blockworker | BA 1-48 |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

I, Shawn Strawn Jr, am hereby amending this file to grievance # 742890. I have been retaliated against for submitting that Initial Grievance, which was a breach of the Retaliation Clause implemented within it. Retaliation for submitting a grievance is also a direct violation of my U.S. Constitutional rights to Access to the Courts, the First Amendment, and in this case a Eighth Amendment tort. For more information regarding that last statement please see the following case laws: Rauser v. Horn, 241 F.3d 330 (3d cir. 2001) and Allah v. Sieverling, 229 F.3d 220, 224-225 (3d cir. 2000). On July 19th, 2018 Mr. Makosy insisted that I go to Ms. Sharon Clark's office for a undocumented meeting. I then expressed to him that I did not feel comfortable meeting with her at which point he stated that he would accompany me. Ms. Clark immediately started asking the psych-ological questions. My first response was "Are you a psych?" to which she aggressively backfired "I'm asking the questions here!" The questions she asked consisted of mental health, medications, and whether or not I felt as if I would hurt myself/someone else. When she finished I was excused from the office to go on with my day. After the undocumented meeting I went to my cell, undressed and grabbed my toiletries, then went to take a shower. When I got back to my cell approximately forty minutes after leaving Ms. Clark's office, I was to lock in and get dressed, when fully clothed I was cuffed and escorted to POC (psych observation cell) by Lt. Frank and a few Correctional officers. During my time in POC I faced serious prison conditions and was not able to contact my worried family. I was embarrassed by being strived while videod and at rig a cell without basic hygiene materials. I wasn't even given soap to wash my hands after urinating/defecating which can lead to life threatening diseases. Within the four and a half days I was designated only showers. I also recieved mistreatment by nurses and other prison officials; including a lieutenant. I suffer from a severe skin condition that left untreated causes me extreme uncomfortability from the itchiness which in turn leaves me scratching/off my flesh. Even the scabs itch and I unconsciously scratch at them causing pain and mutilation to my body. I informed nurses of my condition and the medicine that treats it on several occassions. Even though I am prescribed this medication they refused to give me any. This was the first adverse action of medical malpractice and deliberate indifference I received during Ms. Clark's vindictive retaliation.  (cont.)

**B.** List actions taken and staff you have contacted, before submitting this grievance.

Mr. Makosy (counselor) on July 19th, 2018        Mr. Frank (lieutenant) on July 19th, 2018
Ms. Clark (unit manager) on July 19th, 2018      Ms. Collins (psych)  ⎫
Ms. Bowman (psych) on July 25th, 2018            Ms. Tice (psych)     ⎬ during my time in POC (psych observation cell)
                                                 Dr. Burke (psych)    ⎭ between July 19th, 2018 and July 23rd, 2018

Your grievance has been received and will be processed in accordance with DC-ADM 804.

*[signature]* Still fwd NJP                      Retaliation          8.9.18
Signature of Facility Grievance Coordinator                           Date

WHITE Facility Grievance Coordinator Copy      CANARY File Copy      PINK Action Return Copy
GOLDEN ROD Inmate Copy

→ Major Haldeman ←
8/30

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 1 – Grievances & Initial Review*                          **Attachment 1-A**
Issued: 1/26/2016
Effective: 2/16/2016

EXHIBIT 33

Initial Grievance Cont.

The reason why I labeled this action as such is because lack of hygiene, unclean environments, and open sores could lead to infections that may cause a loss of limbs or even life.

The position Ms. Clark put me in by lying and defaming my character caused me pain, suffering, and mental anguish; so much so that out of anxiety and depression I went out on a hunger strike just so that I may speak with a Deputy about my conflicts and hardships within SCI-Rockview. During this Hunger strike I received a second case of adverse actions by prison officials. On July 21st, 2018, during third shift I passed out from a lack of meals. I asked the neighboring cell's inmate to inform the nurse. When she walked by he told her that I had passed out, but all I apply was that she "Don't care." The same inmate proceeded to inform a Correctional Officer doing his rounds at which point the C/O came by then briefly left. He later returned with the nurse and a Lieutenant. The Lt. told me to get up and I responded by informing him that I have left. They then threatened to gas me if I did not, which I couldn't, follow his demand. They then left, leaving me on the floor for the rest of the night. This was medical malpractice and deliberate indifference because they did not check on vitals nor run any other tests as well as being aware of my lack of eating, and the underlying risk.

I would now like to state that I was not a risk to myself or others on July 19th, 2018. What I have stated during that undocumented meeting are the same as what I have informed multiple prison officials prior to this date. The names of whom I have contacted and dates include the following: Ms. Heather Haldiman (Major) on June 10th, 2018 via request slip; Ms. Mason on July 22nd, 2018 at telemedicine; Ms. Wesson (Psych), on June 10th, 2018 via request slip; June 13th, 2018 at Treatment Building; July 8th, 2018 via request slip; and July 15th, 2018 via request slip which was signed by Ms. Wesson herself on July 17th, 2018...two days prior to Ms. Clark's retaliation. I also sent a request slip to Ms. Clark on July 15th, 2018.

Ms. Wesson, a psych., did not feel as though my expressions showed that I may harm myself/others on several occasions. Lt. Frank did my RCC intake questionnaire and acknowledged that I shouldn't have been admitted. Even pure psychs; including Ms. Collins, Ms. Tice, Ms. Bowman, and Dr. Burke acknowledged that I have never been to Level 5 housing before nor have a psych history of hurting or threatening to hurt anyone including myself. They were appalled by the position Ms. Clark put me in and Ms. Tice even sarcastically stated that "Ms. Clark is such a nice lady" as she rolled her eyes. This was not the first time Ms. Clark has lied or made such allegations but on this particular instance she did not receive a "psych evaluation" as stated by Johnson in the ___. "Ms. Clark, a defendant in Plaintiff Travis Hinton in Fretwell entry, made declarations proving so. Ms. Clark has disregarded policy and the Code of Ethics. Her adverse actions were not 'positive', caused me mental and physical pain, and may have even 'jeopardized my parole.'

This file is not frivolous according to the legal definition that follows: 'Clearly insufficient as a matter of law' obviously lacking in substance. In 1974 the Supreme Court made clear that prisoners do not forfeit all constitutional protection by reasons of their conviction and confinement, please see Wolff v. McDonell, 418 U.S. 539, 555 (1974); Bell v. Frontier, 417 U.S. 817,822 (1974) states (a prisoner retains those rights 'that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional system').

I request that the Major of Unit Management, Ms. Haldiman, not be assigned Grievance Officer due to conflict of interest. She was in fact a staff member I contacted prior to filing Grievance #742850.

Lastly, Respondent Superior, which is Latin for "let the Superior reply", is a legal term that would leave her responsible for the Unit Team's adverse actions.

I ask that the retaliation Clause be reimplemented within this file, any and all undocumented meetings; including but not limited to work, meal, line, disruption of meals, and cell transfers could be seen as a violation of my eighth amendment right of the U.S. Constitution.

The relief I seek is the names of the prison officials present on the night of July 21st, 2018 and video footage of the event. Secondly, a copy of the RCC intake questionnaire. Thirdly, that Ms. Clark be removed from RVA SNU (Special Needs Unit) block or suspended indefinitely for continuous adverse actions against me. I also seek $15,000 dollars of U.S. currency for everyday I spent in serious prison conditions. Lastly, I seek monetary compensation for the violations of my protected U.S. Constitutional rights: Access to the Courts, First Amendment, Eighth Amendment, and an Eighth Amendment Tort, as well as pain and suffering, defamation of character, and retaliation in the form of $1,000,000 dollars of U.S. currency from Ms. Clark and the Department of Corrections.

EXHIBIT 34

# INITIAL REVIEW RESPONSE
## SCI-Rockview
## Box A
## Bellefonte, PA 16823

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows

| Inmate Name: | S. Strawn | Inmate Number: | NA1871 |
|---|---|---|---|
| Facility: | → SCI-Rockview ← | Unit Location: | BA Unit |
| Grievance #: | 751398 | Grievance Date: | 8-9-18 |

*Publication (if applicable): N/A*

| Decision: | ☐ Uphold Inmate |
|---|---|
| | ☒ Grievance Denied |
| | ☐ Uphold in part/Denied in part |

*It is the decision of this grievance officer to uphold, deny **or uphold in part/deny in part** the inmate's initial grievance. This response will include a brief rationale, summarize the conclusion, any action taken to resolve the issue(s) raised in the grievance and, relief sought.*

| Response: | | | *Frivolous* |
|---|---|---|---|

I have reviewed your grievance and have interviewed UM Clark and CC Makosy. I also reviewed hours of video (530pm to 730am) from your cell in Medical. You claim that you have been retaliated against for submitting Grievance #742890 by UM Clark. Your reasoning behind this allegation of retaliation is because of a meeting that occurred in the BA Unit Manager's office on 7-19-18, with yourself, A/CC Makosy, and UM Clark. Upon completion of that meeting, you were placed in a Psychiatric Observation Cell (POC) where you suffered mistreatment in your eyes. The relief you seek is the names of the prison officials present on the night of 7-21-18, the video footage, a copy of the POC Intake Questionnaire, UM Clark be removed from the SNU or suspended and finally financial compensation of $1,500 a day and $1,000.00 from UM Clark and the DOC.

You wrote a letter to the Department of Human Service which was referred to the Office of Mental Health Services. SCI-Rockview was contacted by the DOC Mental Health Advocate and was asked that follow up be provided. UM Clark was directed to speak with you regarding your mental health wellness. During this meeting, you reported that you were having an increase in feelings of snapping out on others and that you were having dreams of trying to kill people who were bigger than you by stabbing them. You also reported that you stopped taking your medications prescribed by the Psychiatrist because they make you sleep to heavy and you can't protect yourself. You denied having any thoughts of wanting to harm yourself or making any attempts to harm yourself in the past 3-4 months. You stated that "I would rather hurt someone else than myself." Upon being informed this meeting was being conducted as a follow up from the letter you wrote to the DHS that was referred to the DOC Mental Health Advocate, your responses changed. You reported that while in the community, the scar on your neck was made by yourself in a prior attempt to harm yourself by cutting your neck. You then testified you attempted to hang yourself back in May and said the reason you never told anybody was because "this isn't something you talk to someone about." Later you asserted you informed Lt. Sherman, who did not report it for follow up, and the PREA Coordinator you wrote in Harrisburg about your alleged attempt to harm yourself in May. You then avowed you informed UM Clark of needing to go to TBO back in May. UM Clark informed you there was no such conversation. You then said to her, "I just need all this documented in

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 1 – Grievances & Initial Review**
Issued: 1/26/2016
Effective: 2/16/2016

*Attachment 1-D*

case I need it." At the end, you asked about getting a "Z" Code due to having issues with cellies.

UM Clark contacted the Shift Commander about your responses during this meeting and of her concerns. A decision was made to place you in a POC so that Psychology/Psychiatry could evaluate your mental health status for your own safety.

The video that I reviewed showed you mostly resting on your bed.  You slept all night on your bed and you awoke at approximately 7am to get your breakfast and sit at your desk.  At no time did you fall to the floor as you allege.  Nor did I observe any scratching motions that would support your claim of being unbearably itchy.

Based on the information reviewed and interviews conducted, I find that UM Clark was following up on concerns as requested from the letters you wrote to outside agencies.  Due to your responses during that meeting, a decision was made to place you in a POC and have Psychology/Psychiatry evaluate your mental health status.  When you make statements like you did and admit to being noncompliant with your medication, we take it seriously and have the professionals evaluate an individual's mental health status. Unfortunately, you are not happy with the outcome of that meeting.  However, I find that UM Clark performed her job in a professional manner and that there is no evidence of retaliation.

As for your relief sought, the names of the prison officials present on the night of July 21, 2018 and the video footage of the event is denied.   Secondly, a copy of the POC Intake Questionnaire is denied. Thirdly, UM Clark will not be removed from the SNU or suspended.  Fourthly, the financial compensation you requested is denied. Your grievance is denied.

| Signature: | H. Haldeman |
| Title: | Major of Unit Management |
| Date: | 8-29-2018 |

cc:    Facility Grievance Coordinator
       UM Clark
       DC-15
       File

Case 1:21-cv-00421-MCC   Document 3-1   Filed 03/15/21   Page 73 of 88
Case 1:02-at-06000-UN   Document 216-2   Filed 03/08/21   Page 64 of 138
EXHIBIT 35

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

| FOR OFFICIAL USE |
| --- |
| GRIEVANCE NUMBER |

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR Ms. Nikki Paul | FACILITY: SCI-Rockview | DATE: 7/27/18 |
| --- | --- | --- |
| FROM: (INMATE NAME & NUMBER) Shawn Strawn NA1871 | SIGNATURE OF INMATE: Shawn L Strawn Jr | |
| WORK ASSIGNMENT: BA Blockworker | HOUSING ASSIGNMENT: BA 1-48 | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

I, Shawn Strawn Jr, am here by amending this file to grievance number 742890. I have been retaliated against for submitting that Initial Grievance, which was a breach of the retaliation clause implemented within it. Retaliation for submitting a grievance is also a direct violation of my U.S. Constitutional rights to Access to the Courts, the First Amendment, and in this case a Eighth Amendment tort. On July 9th, 2018 I was being staffed for parol by BA SNU's (Special needs unit) Unit Management Team, Mr. Makosy and Ms Shawn Clark. Before starting the staffing interview I was given an Informal Resolution Action by Ms. Clark for something I didn't do. The Unit Management Team then coerced me into signing it by saying that if I fight it my parol will be stripped from me. It is my belief that there is a collusion within the establishment of SCI-Rockview amongst prison officials. Out of fear I hesitantly signed because I did not want to risk being subject to a loss of Parol even though I know such acts never occurred. Not only was I coerced by threats ~~to sign~~ the action but also was ~~coerced to~~ ... $2.32. After this meeting Ms. Clark stated "I know about the grievance". The DC-141 part 1 is: D199535, Attachment 2-A was dated July 1st, 2018. The action taken was "Restitution for Damaged/Destroyed State Items/Property and the items it claimed was "2 excess meals". The amount to be paid was "($1.16 x 2) $2.32 total" in which I hesitantly signed on July 9th, 2018 along with a DC-138A cash slip. Ms. Clark also signed on this same date. Attachment 1-B ~~and~~ ~~also~~ stated that the incident was at "culnary". The Misconduct charges included: "Class 1 #35-"Refusing to Obey an Order", # 43-"Presence In an Unauthorized Area", #46-"Theft of service." (cont.)

B. List actions taken and staff you have contacted, before submitting this grievance.
Mr. Makosy - (counselor) on July 9th, 2018            Mr. Sherman - (Lieutenant) on July 11th, 2018
Ms. Clark - (unit manager) on July 9th, 2018            Ms. Haldeman - (Major) via request slip July 12th, 2018
Ms. Pilosi - (hearing examiner) via request slip July 12th, 2018
I have spoken with and/or contacted with the above staff for relief.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____            _____
Signature of Facility Grievance Coordinator            Date

WHITE Facility Grievance Coordinator Copy    CANARY File Copy    PINK Action Return Copy
GOLDEN ROD Inmate Copy

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 1 – Grievances & Initial Review*
Issued: 1/26/2016
Effective: 2/16/2016

*Attachment 1-A*

EXHIBIT 36

## Initial Grievance Cont.

The reporting staff member was Mr./Ms. Phillips and his/her version was as follows; "On 07/01/18 a review of the Meal Management Report indicates that, NA-1871 Strawn received more than one breakfast meal on 06/24/18 and more than one lunch meal on 06/30/18. Per DC-ADM-610 EMMS, Guidelines, NA-1871 Strawn in violation as outlined in Section G5.", Misconduct delayed due to Meal management Report being printed weekly."

I would like to say that I have never, in all of my time being incarcerated within the Department of Corrections, "doubled up" on a meal. The breakfast meal being served on 6/24/18 was fried eggs which I give away every Sunday morning that I attend "chow.' The lunch meal served on 6/30/18 was Frankfurters, also known as hotdogs, in which I can hardly eat two nevertheless four. Mr./Ms. Phillips stated that the alleged incident date was 06/24/18 but yet included another alleged incident that supposedly occurred six days later, which was one day before the report. He/She also stated that the Meal management Report is printed weekly but yet the first "incident" supposedly occurred on a Sunday but yet the report was not filed until the following Sunday. Not only that but it is obvious that this prison official did not take appropriate measures to confirm these allegations; including but not limited to video footage.

This file is not "frivolous" according to the legal definition that follows: "Clearly insufficient as a matter of law; obviously lacking in substance." Regarding retaliation being a direct violation of my U.S. Constitutional rights please see the following case laws: Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) and Allah v. Sieverling, 229 F.3d 220,224-225 (3d C=ir. 2000). In 1974 the Supreme Court made clear that prisoners do not forfeit all constitutional protections by reasons of their conviction and confinement; please see Wolff v. McDonnell, 418 U.S. 539,556 (1974). Pell v. Prownier, 417 U.S. 817, 822 (1974) states: (A prisoner retains those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objections of the corrections system").

I request that the Major of Unit Management, Ms. Heather Haldeman, not be assigned to Grievance Officer due to conflict of interest. She was in fact a staff member I contacted prior to filing Grievance #742890 and this file as well. She was also designated Grievance Officer to the Initial Review Response of Grievance #742890. Lastly, Respondent Superior; which is Latin for "let the Superior reply:, is a legal term that would leave her responsible for the Unit Management Team's adverse actions.

I ask that the Retaliation Clause be reimplemented within this file; any and all undocumented meetings including but not limited to work, cell, meal line, disruption of meal, and cell transfers could be seen as a a violation of my Eighth Amendment right of the U.S. Constitution.

The relief I seek is for video footage to be shown of these alleged incidents. Secondly, that Mr./Ms. Phillips reimburse the $2.32 plus interest to my inmate account if no such evidence exists. lastly, I seek monetary compensation for the violations of my protected U.S. Constitutional rights, pain and suffering, defamation of character, and retaliation in the form of $1,000,000 dollars in U.S. currency from Ms. Clark and the Department of Corrections.

Truthfully Submitted,
Shawn L. Strawn, Jr.

(Signature, Shawn L. Strawn)

cc:file

EXHIBIT 37

| Form DC-141 Part 1 Rev. 12/2017 | **COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS** | | D 194535 | | |
|---|---|---|---|---|---|

☐ MISCONDUCT REPORT    ☐ OTHER    ☒ DC-ADM 801 INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| NA1071 | Strawn, Shawn | SCIR | 0907 | 06/13/18 | 07/01/18 |

| Quarters | Place of Incident |
|---|---|
| BA 1030 | Culinary |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION**

Class 1 # 35-Refusing to obey an order  #43-Presence in an unauthorized area
With item + scans

**STAFF MEMBER'S VERSION**

On 6/13/18 a review of the meal management report indicates that Na1071 Strawn received more than one breakfast meal on 6/12/18 and more than one lunch meal on 6/9/18. Per DC-ADM 610 regulation guide lines, Na1071 Strawn is in violation as outlined in Section C.5.

#1 Misconduct delayed due to meal management report being printed weekly.

**IMMEDIATE ACTION TAKEN AND REASON**    For SIS

| **PRE-HEARING CONFINEMENT** | | | | |
|---|---|---|---|---|
| | IF YES | | SIS 0800 | |
| ☐ YES ☐ NO | TIME | DATE | FORMS GIVEN TO INMATE ☐ REQUEST FOR WITNESSES AND REPRESENTATION    ☐ INMATE'S VERSION | |

| **REPORTING STAFF MEMBER SIGNATURE AND TITLE** | **ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY  SIGNATURE AND TITLE** | **DATE AND TIME INMATE GIVEN COPY** | |
|---|---|---|---|
| A.L. Phillips  col | | DATE | TIME 24 HOUR BASE |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER _____DATE_____    _____TIME_____ | **MISCONDUCT CATEGORY** | | **Signature of Person Serving Notice** |
|---|---|---|---|
| | ☐ CLASS 1 | ☐ CLASS 2 | |

**Notice to Inmate**

You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say shall be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you shall be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have shall be revoked.

WHITE - DC-15         YELLOW – Inmate         PINK – Reporting Staff Member

EXHIBIT 38

# Informal Resolution Action Form

B-A-1050-02

| Inmate Name (Printed) | Inmate Number | DC-141 Part Number | Date: |
|---|---|---|---|
| Shawn Strawn | WAV8711 | D194535 | 7/1/2018 |

## Action Taken

| | | | |
|---|---|---|---|
| ☐ No Action | | | |
| ☐ Reprimand and Warning | | | |
| ☐ Referred to the Hearing Examiner at the request of the inmate | | | |
| ☐ Referred to Hearing Examiner by Unit Manager | | | |
| ☐ Carried on active MH/ID Roster and assigned to RTU or other appropriate treatment/program after consultation with PRT | Reason: | | |

| | Number of Days: | Start Date: | End Date: |
|---|---|---|---|
| ☐ Cell Restriction (Up to 14 days) | | | |
| Loss of Privileges: (Up to 14 days) ☐ Telephone ☐ Yard ☐ Day Room ☐ Other: | Number of Days: | Start Date: | End Date: |
| ☐ 14 days Loss of Commissary | | Start Date: | End Date: |
| ☐ Loss of job due to work-related misconduct(s) | | Start Date: | |
| ☐ Assignment of Additional Work Duties (No compensation allowed) up to 14 days | Assignment | Start Date: | End Date: |
| ☑ Restitution for Damaged/Destroyed State Items/Property | Item(s) 2 excess meals | Amount to be Paid: ($1.16 x 2) $2.32 total | |

S. Clark
Unit Manager's Name (Printed or Typed)          Unit Manager's Signature          7/9/2018          Date

☐ Inmate provided a copy of Cell Restriction Procedures

Shawn L Strawn J7          7/9/18
Inmate's Signature          Date

cc: DC-14 (original)
    Hearing Clerk

**DC-ADM 801, Inmate Discipline Procedures Manual**
**Section 2 – Informal Resolution**          *Attachment 2-A*
Issued: May 20, 2015
Effective: July 2, 2015

| DC-138A | EXHIBIT 39 |
|---|---|
| **CASH SLIP** | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |

**1. REQUISITIONING INMATE**

Shawn Strawn

| INSTITUTIONAL NUMBER | BLOCK LOCATION | DATE |
|---|---|---|
| NA1811 | B-A-1050-02 | 7/9/2018 |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

I authorize the Department of Corrections to deduct $2.32 from my account for two(2) excess meals as per the Informal Resolution Action.

DC-141 Part 1 # D194535

| **3. INMATE'S SIGNATURE** | **4. OFFICIAL APPROVAL** |
|---|---|
| | |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| $ | | |

EXHIBIT 40



Integrated Offender Case Management System          8/1/2018 9:10:07 AM

## Monthly Account Statement

**From Date:**  07/01/2018          **To Date:**  08/01/2018

| Housing | Case ID | Offender Name | | Location |
|---|---|---|---|---|
| B-A-1048-01 | NA1871 | STRAWN,SHAWN | | Rockview |

| Batch# | Txn Date | Txn Description | Txn Amount($) | Balance After Transaction($) |
|---|---|---|---|---|
| ROC-034153 | 07/03/2018 | 37 - Postage  (First Class Mail) | -3.50 | 106.24 |
| ROC-034249 | 07/13/2018 | 32 - Commissary (ROC COMMISSARY FOR 07/13/2018) | -21.51 | 84.73 |
| ROC-034286 | 07/18/2018 | 10 - Maintenance Payroll (GRP 3 - 14th -13th) | +25.20 | 109.93 |
| ROC-034286 | 07/18/2018 | 50 - Act 84  (CP-22-CR-0000168-2016) | -5.04 | 104.89 |
| ROC-034286 | 07/18/2018 | 40 - Institutional Fines (D194535) | -2.32 | 102.57 |
| ROC-034397 | 07/27/2018 | 32 - Commissary (ROC COMMISSARY FOR 07/27/2018) | -26.91 | 75.66 |

**Current, Escrow  & Available Balances are  as  of 8/1/2018 9:10:07 AM**

| | |
|---|---|
| Current Balance | 75.66 |
| Escrow Balance | 0.00 |
| Available Balance | 75.66 |

EXHIBIT 41

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1: To: (Name and Title of Officer)<br>Ms. Bowman (psych counselor) | 2. Date:<br>7/26/18 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>Shawn Strawn NA1871<br>Shawn L Strawn JL<br>Inmate signature | 4. Counselor's Name<br>Mr. Makosy<br>5. Unit Manager's Name<br><br>MRS. S CLARK |
| 6. Work Assignment<br>BA Block worker | 7. Housing Assignment<br>BA 148 |

8. Subject: State your request completely but briefly. Give details.

I request (via this request slip) confirmation that our "psychology" meeting on July 25th 2018 was indeed confidential and the clause of the Hipa Laws Doctor/Patient confidentiality clause was not violated. I thank you for your time and consideration in reading this.

CC: File

9. Response: (This Section for Staff Response Only)

Mr. Strawn,

On 9/28/17 you signed a DC-484 Mental Health Informed Consent. This document was reviewed with you and states the limitation of confidentiality. Per our meeting on 7/25/18, due to your release from VOC, our meeting #11 under that document. I have attached a copy of a DC-484 so that you are able to review it. If you have any questions please write to your assigned psych, Ms. Wasson as I only met with you that day because she was unable to.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name ___CD Bowman PBS___ Date _7/31/18_
Print        Sign

COMMONWEALTH OF PENNSYLVANIA

## MENTAL HEALTH INFORMED CONSENT DOCUMENT

I_____, consent to meeting with __Psychology Staff__ one or more times
for the purpose of: __Treatment, Evaluations/Assessments, Intake, Aftercare/Continuity of Care__
__Planning, Transfer Treatment Plans, and Individual Recovery Plans__ . I understand that any
information about myself, that I disclose during the meeting or meetings, will not be disclosed
by the Department of Corrections except as follows:

1. Non-confidential information obtained by, or available to, the Department of Corrections
   from other sources is not confidential. Confidential information, such as records of prior
   mental health treatment, obtained from another source, will be kept confidential by the
   Department of Corrections.

2. Information I discuss may be disclosed if the psychiatrist, psychologist, or other person
   disclosing the information believes that I am a threat to my own health or safety or the
   health or safety of another person or to the security or orderly operation of any
   correctional facility or Community Corrections Center.

3. *Any acknowledgement of abuse of a minor to Departmental staff may not be*
   *confidential and will be reported to the authorities, if not done so previously.*

4. Information I disclose may be used to prepare reports or recommendations, or to make
   decisions regarding any aspect of my current or future custody including, but not limited
   to, my housing, work or program status, pre-release or parole. I understand that I may
   discuss any questions I have regarding whether specific information will be kept
   confidential with the above-named treatment professional.

   I have read this form or have had this form read to me, have been given an opportunity to
ask questions about it, and acknowledge that I understand and consent to the disclosure of
information as set forth in the above form.

_____                    _____    _____
Signature                                                  Print Name               Inmate No.

I explained his/her rights to him/her and believe that he/she understands these rights.

_____                    ___/___/___
Witness Signature/Title                                     Date

Comments (does not understand these rights):_____

Directions for use of this form are presented in Subsection 2.I. of this procedures manual.

Copies:         Medical Records/Psychiatric Section
                Inmate

DC-484

*13.8.1, Access to Mental Health Procedures Manual*                    *Attachment 2-K*
*Section 2 - Delivery of Mental Health Services*
Issued: 5/2/2016
Effective: 5/9/2016

## AFFIDAVIT

On the date of <u>July 25, 2018</u>, I, <u>Tyler Giamo (NA-0218)</u> was called to Counselor's Makosy office. I was speaking to Mr. Makosy on the matter of why I had signed papers to serve the remainder of my sentence max papers. During our conversation, Mr. Makosy received a phone call. Instead of excusing me from the office or telling the caller that he would call them back, Mr. Makosy broke confidentiality with one of his clients (Mr. Strawn) in which the call was in regards to.

During this phone call Mr. Makosy went on to belittle inmate Strawn by calling him names such as (Homicidal Nut, Retard, and Nutcase). Mr. Makosy also went on to converse in detail why inmate Strawn was removed from housing unit BA and placed in TBO. Mr. Makosy spoke of inmate Strawn being Homicidal, then went on to call him a homicidal nut and a nutcase. There was also conversation about inmate Strawn writing something on a piece of paper. I, Tyler Giamo, am a witness to Mr. Makosy breaking confidentiality and belittling inmate Strawn in front of me.

The facts set forth in the foregoing are true and correct to the best of my knowledge, information, and belief and verified subject to the penalties for unsworn falsification to authorities under Pennsylvania Crimes Code 4904 (18 Pa.C.S.A. §4904)

_Tyler Giamo_
Tyler Giamo, NA-0281

DATE: 01 / 19 /2019

EXHIBIT 42

## DECLARATION IN SUPPORT OF PERRY BURRIS/SHAWN STRAWN JR.

I, <u>Edward Wright</u>, # MD-9460 hereby declares the following:

1. On 11/22/18 I made Sharon Clarrk Unit Manager of BA-SNU aware that my cellmate was hostile, violent and endangering my safety and that I needed to be moved.

2. Sharon Clark Unit Manager of BA-SNU ignored the request slip I wrote and never answered nor returned it and she told me that moving was not a top priority in person.

3. As a result of Sharon Clark Unit manager of BA-SNU not taking action on 11-29-18 my cell mate Kennith Patterson attacked me with a lock in a sock. I had to go to the hospital and received 4 staples in my head.

I, Edward Wright, # MD-9460 hereby declares under penalties of perjury the statement is true and correct to the best of my knowledge, understanding and belief, under 18 Pa.C.S § 4904.


_E w t_
_____
Edward Wright

DATE: __1__ / __4__ / __19__

PART III FACTS

62. Plaintiff [Edward Wright] is a D-Code Diagnosis Mentally Ill Inmate at SCI Rockview, S.N.U. Block.

63. Plaintiff [Edward Wright] told Defendant [Sharon Clark] in writing several times in November 2018 that his cell mate [Kennith Patterson] was a danger to Plaintiff [Edward Wright] and that Plaintiff [Edward Wright] requested to be moved or have cell mate [Kennith Patterson] moved.

64. Defendant [Sharon Clark] never answered and destroyed Plaintiff [Edward Wright] written request and knew that cell mate [Kennith Patterson] was a violent inmate with a history of sexual deviance.

65. Plaintiff [Edward Wright] on both [11-22-18] and [11-27-18] again approached Defendant [Sharon Clark] in a meeting to persuade Defendant [Sharon Clark] to take action on Plaintiff [Edward Wright] safety and security and Defendant [Sharon Clark] chose to ignore protecting Plaintiff [Edward Wright]. SEE: Exhibit A

66. Defendant [Heather Halderman] in a conspiracy with Defendant [Sharon Clark] intentionally attempted to tell lies in official investigation and report to cover up for Defendant [Sharon Clark] in spite of Plaintiff [Edward Wright] physical injuries due to Defendant [Sharon Clark] not protecting Plaintiff [Edward Wright] from assault. Defendant [Heather Halderman] embellished findings to protect Defendant [Sharon Clark] and denied Plaintiff [Edward Wright] administrative relief on 12-21-18. SEE: Exhibit B

67. Plaintiff [Edward Wright] on 1/2/19 presented the case to Defendant [Mark Garman] about Defendant [Heather Halderman] history with Defendant [Sharon Clark] how there is a long pattern of abuse of inmates and that in these cases Defendant [Heather Halderman] knowingly allows [Sharon Clark] to go un-disciplined. SEE: Exhibit C

68. Defendants [Sharon Clark], [Heather Halderman], [Jane/John Does], [Mark Garman], and [John E. Wetzel] orchestrated a tradition at SCI Rockview that fails to protect inmates by

-22-

continuing to not put in place a De-Escalation Policy, De-Escalation training and De-Escalation Procedures around cell mate agreement history which wide spread abuse and the systematic problem causes injury to inmates. SEE: Exhibit C

69. Defendant [Mark Garman], [Heather Halderman], and [Sharon Clark] desired to punish Plaintiff [Edward Wright] with being forced to choose freedom in general population being subjected to physical violence by cell mate [Kennith Patterson] or being subjected to punishment in solitary confinement when Plaintiff [Edward Wright] only wanted to be moved to be safe from violence but Defendants [Mark Garman], [Heather Halderman], and [Sharon Clark] imposes that solitary confinement as the only option in spite of Plaintiff [Edward Wright] D-Code stability Mental Health Illness. SEE: Exhibit D

70. Defendant [Mark Garman], [John E. Wetzel], and [Dorina Varner] each was presented with the facts of knowing previous history of assaults prior to Plaintiff [Edward Wright] assault and in no case has Defendants [Sharon Clark], [Heather Halderman] or any other staff been punished for failure to protect inmates safety at SCI Rockview nor has Defendants [Mark Garman], [John E. Wetzel], and [Dorina Varner] been willing to compensate for inmate physical injury. SEE: Exhibit E

71. Defendant [Sharon Clark] has done the same thing over and over again to D-Code Mentally Ill inmates subjecting them to abuse by deliberately failing to protect inmates from danger of physical assault. SEE: Exhibit F and Exhibit G

72. Defendants [Security Office Jane/John Does], [John E. Wetzel], and [Dorina Varner] maintains a pattern of abuse, continuous history of inmate assaults, and violent traditions at SCI Rockview that permits the custom of staff allowing cell mate assaults after being warned and the ignoring of implementing a cell agreement policy, de-escalation of cell mate violence through a policy, procedure and training in De-Escalation techniques.

73. Defendant [Sharon Clark] in action of not moving Plaintiff [Edward Wright] from cell mate [Kennith Patterson] or moving cell

mate [Kennith Patterson] from Plaintiff [Edward Wright] when
requested several times, resulted in Plaintiff [Edward Wright]
being victimized, hospitalized and injured with 4 staples in
head.

74. Defendant [Heather Halderman] actions of never ever
disciplining Defendant [Sharon Clark] in any case of inmates
complaints against [Sharon Clark] contributed to the results of
[Sharon Clark] failure to protect Plaintiff [Edward Wright] from
assault.

75. Defendants [Mark Garman], [Heather Halderman], [Sharon
Clark], [Security Office Jane/John Does], [John E. Wetzel], and
[Dorina Varner] prior to assault of [Plaintiff [Edward Wright]
knew cell mate [Kennith Patterson] history for violence and
sexual deviance and know [Kennith Patterson] was not supposed to
be housed on BA Unit and ignored the risk allowing cell mate
[Edward Wright] to be removed off RTU which resulted into
Plaintiff [Edward Wright] being victimized on [11-29-18].

76. Defendants [John E. Wetzel], [Dorina Varner], [Security
Office Jane/John Does], [Heather Halderman], [Sharon Clark] and
[Mark Garman] were in possession of [Kennith Patterson]
misconduct history, psychological history, criminal history as
well as knowing Plaintiff [Edward Wright] was vulnerable being
imprisoned in State system for 1st time on a short sentence here
and waiting to make parole. Defendants named did fail to protect
health and safety and set Plaintiff [Edward Wright] up to be
injured.

77. Plaintiff [Edward Wright] suffered injury of 4 staples in his
head after being assaulted viciously with metal lock in a sock.

78. Defendants [Sharon Clark], [Heather Halderman], [Mark
Garman], [Security Office Jane/John Does], [John E. Wetzel], and
[Dorina Varner] at all times operates at SCI Rockview a
historical environment of staff racism that is customary,
traditional and practiced whereby Defendants et al named hereby
selectively discriminates against black inmates in cell
assignment moves whereby white inmates and non-blacks are awarded
moves and black inmates are rejected and whereas white staff

-24-

Defendants et al permits and encourage without discipline the setting up of "Nigger Gladiator Camp" (the cycle of black on black violence) manipulated by staff in cell battle wars.

79. Defendants [Sharon Clark], [Heather Halderman], [Mark Garman], [Security Office Jane/John Does], [John E. Wetzel], and [Dorina Varner] operated a systematic conspiracy to cover up, embellish, harass, intimidate, and retaliate at SCI Rockview for Plaintiff [Edward Wright] reporting of complaints through established grievance system.

80. Plaintiff [Edward Wright] after filing grievance #774290 on 12/1/18 about being assaulted, Plaintiff [Edward wright] was subsequently retaliatory moved off top tier from 245 cell in back of block to 102 cell bottom tier in front of block by Defendant [Sharon Clark] who began to harass Plaintiff [Edward Wright] daily to provoke an incident or justify a false misconduct.

81. Plaintiff [Edward Wright] has exhausted all 3 levels of Inmate Grievances Administrative Appeals. SEE: Exhibit H

CAUSES OF ACTION

Lines 6a through 81
(a). Official Oppression
(b). Failure To Protect Health And Safety
(c). Failure To Adequately Investigate And Denial of Administrative Due Process On Complaints
(d). Failure To Implement A De-Escalation Policy Procedure Training On Cell Agreements
(e). Abuse Of Mentally Ill Inmates D-Code Stability
(f). Racial Discrimination

[PHYSICAL INJURIES]

1. Hospitalization/4 Staples in Head
2. Nightmares/Nighttears
3. Tremors and Insomnia
4. Physiological And Psychological Damage

-25-

5. Emotional and Psychological/Trauma and Stress
6. Pain and Suffering From Assault

[VIOLATIONS]
Lines 62 through 81
PA Const. Art 1 Sec. 7
PA. Const. Art 1 Sec. 13,
PA. Const. Art 1 Sec. 26
1st Amendment of U.S. Constitution
8th Amendment U.S. Constitution
14th Amendment U.S. Constitution
Article II Americans With Disability Act
Mental Illness 42 U.S.C. §§ 12131 - 12134
42 U.S.C § 1981
42 U.S.C 1985
42 U.S.C § 1986

[RELIEF]

DECLARATORY - JUDGEMENT OF RIGHTS
INJUNCTIVE RELIEF - PROSPECTIVE PROTECTIVE ORDER
DAMAGES  -  Monetary  Rewards  Punitive  Damages  $50,000  each
Defendant and Compensatory Damages $50,000 each Defendant.
Trial By Jury Demanded.
Plaintiff Cost of Suit
Plaintiff Cost of Litigation

-26-

EXHIBIT A

**RECEIVED**

DC-804   DEC 0 3 2018
Part 1
at Rockview
Supt's Assitant's Office

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
774290
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: S.C.I Rockview | DATE: 12/1/18 |
|---|---|---|

FROM: (INMATE NAME & NUMBER)
EDWARD Wright MD9460

SIGNATURE OF INMATE:

WORK ASSIGNMENT: Refused

HOUSING ASSIGNMENT: 215 BA Unit

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

On 11/22/18 my cellmate made threats towards me so I went to MS. S. CLark (unit manager BA) and let her know that I needed to move. She told me that it was Not a top priority. I told her that my cellmate was hositle and violent she said Just chill for now. On 11/29/18 I was attacked by my cellmate at about 8:20AM with a lock in a sock. I Lost a lot of blood and had to be rushed to the ER where I received 4 staples In my head. I she had moved me when I asked her this would've not happened

B. List actions taken and staff you have contacted, before submitting this grievance.

Also, I inmate who attacked me was known to have conflict with his cellmates. Kennith Patterson is who attacked me. 11/27/18 is when I

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator

Probw/staff UM   12/3/18
Date

WHITE Facility Grievance Coordinator Copy      CANARY File Copy      PINK Action Return Copy
GOLDEN ROD Inmate Copy

*(margin notes, right side):*
I wish to be com-pensated For my injury

I talked to CLark Also there were cells geese open she could have placed me IN.

Major Haldeman

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 1 – Grievances & Initial Review**
Issued: 1/26/2016
Effective: 2/16/2016

*Attachment 1-A* 12/24